### Southern Oil Company W. F. Colquitt et al.

#### Decided February 22, 1902.

**Homestead—Oil Lease—Joinder of Wife.**

Since oil in place under the soil is a mineral, and minerals in place are land, an oil lease investing the lessee with the right for an indefinite time to remove all the oil under a tract of land, and to erect on the land all buildings, etc., necessary for that purpose, in consideration of his giving the lessor 10 per cent of the net products of the oil, is in legal effect a sale of a portion of the land, and, where the land is homestead, is ineffectual without the joinder and separate acknowledgment of the wife. Rev. Stats., art. 636.

Appeal from Navarro. Tried below before Hon. L. B. Cobb.

*Frost, Neblett & Blanding,* for appellant.

*Callicutt & Cale,* for appellees.

BOOKHOUT, Associate Justice.—On the 21st day of January, 1901, appellant by petition applied to the judge of the District Court for the Thirteenth Judicial District for an injunction against appellees, restraining and enjoining them from sinking certain oil wells and taking the oil from under a certain tract of land in Navarro County. A temporary order of injunction was granted. On the 2d day of February, 1901, appellees filed exceptions to the petition, answered under oath, and filed a motion to dissolve the injunction. On the 14th day of May, 1901, the exceptions and demurrers to the petition were heard, and all demurrers were overruled except special demurrers number 2 and

number 5, pointing out that the property was homestead and not sub-
ject to the lease declared on in appellant's petition, because it appeared
that Towns, one of the appellees, was a married man at the time of the
alleged transaction and the property was homestead, and it did not
appear that the wife of Towns joined in the lease or participated in the
transaction alleged in plaintiff's petition. These demurrers were sus-
tained. Appellant declining to amend, the case was dismissed. Appel-
lant gave notice of appeal, and perfected its appeal to this court.

There are two assignments of error in the record, both of them pre-
senting the proposition that the wife of Towns, one of the appellees, was
not a necessary party to the oil lease affecting the homestead of Towns
and wife, and that said oil lease and transaction declared on by appel-
lant did not purport to be a conveyance of any part of the home-
stead of Towns and wife as made it necessary for the wife of Towns to
sign and privily acknowledge such lease.

The petition, in substance, alleges that on the 3d day of February,
1897, Towns owned and was in possession of the land described, being
100 acres in Navarro County; that on that date he was a married man,
the land was community property of Towns and wife, and they were
living upon it, occupying and enjoying said tract of land. That on the
3d day of February, 1897, said Towns and wife were using the land for
agricultural purposes, that is to say, they were cultivating crops of corn,
cotton, and other agricultural products thereon, as before stated, and
were residing thereon. That at the time said Towns executed and
delivered said written contract to the Petroleum Oil Association of Cor-
sicana, by which he gave the said association the right to enter upon
said land and sink wells thereon and take from beneath the surface
thereof oil, gas, and water; that in said contract it was provided that in
consideration of the said Petroleum Oil Association sinking the necessary
wells for reaching the oil, gas, and other minerals in and under the
land and to remove them therefrom the said Association should have
nine-tenths of the product and the said Towns one-tenth. And it was
further provided and made a part of the consideration of said contract
that the said Towns should have the right to use for domestic purposes
such gas as he desired by making his own connection with said wells.
Appellant was given the right to lay the necessary pipes for conducting
said water and gas and removing the gas and oil from said land. The
right to so enter upon said land and operate for oil, gas, and other
minerals and to remove the same was made subject to the right of the
said Towns and wife to occupy and use said land for agricultural and
all other purposes, and said association was made responsible for all dam-
ages done to crops, and was required, whenever so directed by said
Towns, to bury all pipes so as not to interfere with the use of the land
for agricultural purposes. That by the terms of said contract the said
Petroleum Oil Association and its assigns had the right within five years
from the 3d day of February, 1897, to enter on said land and operate for
oil, gas, and other minerals, and it was alleged that the time had not

·expired within .which appellant could exercise this right, and would not expire until the 3d day of February, 1902. That said instrument after being executed and delivered by the said Towns was by him acknowledged and properly recorded in the county clerk's office of Navarro County. This contract made with the said Towns was by the Petroleum ·Oil Association for a valuable consideration transferred and delivered to appellant prior to the 3d day of January, 1901. And it was alleged that at the time of the institution of this suit appellant owned said contract, together with all the rights and privileges thereunder. It was further alleged that after the execution of said contract between the said Towns and the said Petroleum Oil Association, and prior to the 3d ·day of January, 1901, the wife of said Towns died, and that after her death, and about the 3d day of January, 1901, the said W. T. Towns executed and delivered his certain deed to appellees W. F. Colquitt and O. B. Colquitt, wherein he undertook to convey in fee simple an undivided one-half interest in and to said land covered by the lease and contract made with the Petroleum Oil Association. And that on the same day, January 3d, 1901, said Towns executed and delivered a contract to the Said W. F. Colquitt and O. B. Colquitt, composing the firm of Colquitt Bros., whereby the said Towns agreed that the said Colquitt Bros. should drill two test wells on said 100 acres of land, 50 acres of which it was recited had been sold to Colquitt Bros. and the other 50 acres was owned by the said Towns, and if oil was found in paying quantities, then the Colquitt Bros. should furnish money for developing the oil on said ·land, and after paying the expenses, etc., the money arising from oil produced should be equally divided between the said Towns and Colquitt Bros.

It was further shown by the petition that Colquitt Bros. had entered upon said land, placed machinery thereon, and erected derricks for the purpose of sinking wells for the purpose of taking the oil from the land, and excluded appellant from said land and would not permit it to enter thereon for the purpose of drilling for oil and gas, but denied its right to do so. It was further alleged that Colquitt Bros. acquired their rights with full notice, actual and constructive, of appellant's rights. The written contract referred to was made a part of the petition. This contract provides that the Petroleum Oil Association should at its own expense sink the necessary wells for reaching the oil and gas under said land, and that nine-tenths of the product was conveyed to the Petroleum Oil Association and one-tenth reserved to Towns. It was further provided that the premises should be held on the following conditions: If gas, oil, coal, or other minerals were found the said association was to pay one-tenth of the net product quarterly of each well, while the same was being used off the premises, and of each mine to the said Towns, and the said Towns was given the privilege of using gas free of charge for domestic purposes, and no well should be drilled nearer than 200 feet of the house and barn on the premises. Five years were given within

which wells should be sunk, but a forfeiture could be prevented by paying an annual rental of $25 per annum until the wells were completed. The association was given the right to remove their property from the premises at any time. It is to be noted that neither Towns nor his wife were dispossessed, nor does it appear that they could have been dispossessed.

*Opinion.*—The question presented is, can the husband make a contract whereby he conveys all the oil, gas, coal, and other minerals under the homestead of himself and wife, with the right to the purchaser at all times to enter upon the homestead tract for the purpose of drilling for oil, gas, coal, and other minerals, and to conduct all other operations and lay all pipes necessary for the production and transportation of all oil produced and saved from said premises, reserving to himself one-tenth of the oil so produced and saved, without his wife having joined in such conveyance in the manner and form required by the statute for the sale of the homestead?

By the terms of the contract, a copy of which is made an exhibit to the petition, it is stipulated that W. T. Towns conveyed to the Texas Petroleum Oil Association, "all of the oil, gas, coal, and other minerals in and under the homestead of Towns and wife, together with the rights if ingress and egress at all times for the purpose of drilling for oil, gas, or water, reserving to the said Towns one-tenth of all the oil produced and saved from said premises." And further, "to have and to hold the above premises forever unto the said association, its heirs and assigns." The tenure or holding could continue for five years without said association doing anything whatever, or in the event a well was begun and prosecuted with due diligence within five years from the date of said instrument then the grant was perpetual, and even if no well was bored on the premises the lease or conveyance could be renewed from year to year by the payment of twenty-five dollars to said Towns. It would seem that the drilling of oil wells on said homestead, the laying of pipes necessary for the production and transportation of oil, would necessarily interfere with and impair the value and use of the land as a homestead. An additional clause in said contract provides that "the association, its successors and assigns, shall have the right to use sufficient oil to run its machinery both on this land and on the adjoining land, and also the right to remove its machinery at any time." This clause indicates that the association would have the right to construct machinery for the boring and digging of wells, and the right to erect derricks, build tanks, and place boilers, engines, and machinery for the operation of the same. Such a lease and contract, in our opinion, would substantially interfere with the enjoyment by the wife of the homestead. It, in fact, would destroy the homestead use of the property, or to at least a portion of the same. The contract does not limit the amount of land the company may take for the above purpose. If the contract be considered a lease we are of the opinion that it is void. Dike *v.* O'Conner, 83 Texas, 160;

Hennessey v. Loan Co., 55 S. W. Rep., 125; Williams v. City of Galveston, 58 S. W. Rep., 551; Land Co. v. Gas, Coal and Oil Co., 43 Kan., 518, same case, 23 Pac. Rep., 630.

We are, however, of the opinion that the contract, although denominated an oil lease, is in fact a conveyance of a portion of the homestead. It is held that oil in place under the soil is a mineral, and that minerals in place are land. Caldwell v. Fulton, 31 Pa. St., 475; same case, 72 Am. Dec., 760; Wilson v. Hughes, 39 Law Rep. Ann., 292.

An oil lease investing the lessee with the right to remove all the oil in place in consideration of his giving the lessor a certain percent thereof, is, in legal effect, a sale of a portion of the land. Wilson v. Hughes, supra.

The contract conveys all the oil under the homestead produced and saved except one-tenth of the amount so produced and saved and reserved to the grantor, Towns. Such a contract, as above stated, is a conveyance of land. Caldwell v. Fulton, 72 Am. Dec., 720; Wilson v. Hughes, 39 Law Rep. Ann., 292; Land Co. v. Gas, Coal and Oil Co., 23 Pac. Rep., 630; Bryan on Law of Pet. and Nat. Gas, sec. 18; Barr. & A. on Law of Mines and Mining, 51.

Under the laws of this State the homestead of a family can not be sold by the husband without the consent of the wife, which consent must be evidenced by the wife's joining in the conveyance and signing her name thereto, and also her separate acknowledgment thereof taken and certified to before the proper officer in the mode pointed out by statute. Batts' Ann. Stats., art. 636. The conveyance to the oil company of all the oil under the homestead, produced and saved, less one-tenth retained by the grantor, was a sale of the homestead within the meaning of this statute.

We conclude that the contract set out in the petition was void and that the trial court did err in sustaining the exceptions thereto. The judgment is affirmed.

*Affirmed.*

Writ of error refused.