## WITHERSPOON v. STALEY et al.

(Court of Civil Appeals of Texas. Dallas. July 1, 1911.)

1. MINES AND MINERALS (§ 79*)—OIL AND GAS LEASES—PAYMENTS—TIME—WAIVER.

Under an oil and gas lease requiring the lessee to pay $25 every 60 days until commencement of drilling operations, the lessor waived failure to pay the third installment on time by receiving the second installment after it was due, and by failing for several days after being informed that the payment had been deposited in a bank to refuse to receive it.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 79.*]

2. MINES AND MINERALS (§ 81*)—OIL AND GAS LEASES—JUNIOR LESSEES—RIGHTS.

A junior oil and gas lessee contracting with knowledge of facts concerning the prior lease is in no better position than the lessor.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 81.*]

3. MINES AND MINERALS (§ 58*)—OIL AND GAS LEASES—MUTUALITY.

An oil and gas lease, running for five years, and as long thereafter as oil, gas, or other minerals shall be found in paying quan-

tities, and providing for forfeiture unless operations were commenced with due diligence within 60 days, or the lessee should pay $25 every 60 days until the well should be commenced, etc., is not void as being unilateral.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 58.*].

Appeal from District Court, Navarro County; H. B. Daviss, Judge.

Action by C. L. Witherspoon against W. H. Staley and others. From an order dissolving a temporary injunction, plaintiff appeals. Affirmed.

W. J. McKie, for appellant. R. S. Neblett and Richard Mays, for appellees.

RAINEY, C. J. This is an injunction suit brought by appellant to restrain appellee from entering upon a certain tract of land and developing or searching for oil or gas thereon, as per a contract entered into between appellee and one Dr. Frank Hines, on the 30th day of September, 1910. A temporary injunction was granted by the district judge and which was afterwards dissolved, and from the dissolution this appeal was taken. The controversy arises over the validity and existence of a written contract entered into between Dr. Hines and appellee, as follows:

"The State of Texas, County of Navarro— Know all men by these presents: That I, Frank Hines, of Corsicana, Navarro County, Texas, the party of the first part, in consideration of the sum of $25.00 paid by W. H. Staley, party of the second part, the receipt of which is hereby acknowledged, and the further consideration hereinafter mentioned, have granted, bargained, sold and conveyed, and by these presents grant, bargain, sell and convey unto the said party of the second part, his heirs and assigns, all of the oil, gas and coal and other minerals in and under the following described land, together with the right of ingress and egress, at all times, for the purpose of drilling, mining and operating for minerals and to conduct all operations and to lay all pipe necessary for the production, mining and transportation of oil, gas, water, coal or other minerals with the right to use sufficient water, gas, or oil to operate said property and shall have the right to remove all machinery, fixtures and improvements placed thereon at any time, reserving, however, to the party of the first part the equal one-eighth (⅛) of all oil produced and saved upon said premises, to be delivered in the pipe line to the credit of the party of the first part free of charge. If coal is found the party of the second part agrees to pay the first party four cents per ton for every ton of the same that is mined and marketed, payable quarterly; if gas or other minerals are found, second party agrees to pay the first party one hundred ($100.00) dollars for the product each year,

payable quarterly, for the product of each well, while the same is being used off the premises, and party of the first part by furnishing his own pipe and connections shall have sufficient gas free of cost for use in one dwelling house on the premises so long as the gas is utilized off the premises, but at his own risk.

"Whenever first party shall request it, second party shall bury all oil and gas lines and pay all damage to growing crops by reason of burying and removing the same. No well shall be drilled within 300 feet from any building now on said premises without the consent of the first party; said land being of the following description, to wit, 245 acres more or less, out of the Jno. McNeal survey, and being the same land conveyed to me by A. W. Merrill, which said deed is recorded in Book 110, page 590, of the Deed Records of Navarro county, Texas, to which reference is here made for a more particular description of said land, containing 245 acres, more or less. To have and to hold the above-described premises for the term of five years from the date hereof, and as long thereafter as oil, gas or other minerals are found in paying quantities thereon. In case operations for either the drilling of a well for oil, gas, mining or other minerals is not commenced and prosecuted with due diligence within 60 days from this date, then this grant shall immediately become null and void as to both parties; provided that second party may prevent such forfeiture from year to year by paying to the first party the sum of $25.00 every 60 days until such well is commenced, or until shipments from such mines have begun, which payments can be made at the First National Bank of Corsicana, Texas, or payable direct to party of the first part, and it is agreed that the drilling of a well shall operate as a full liquidation of a rental under this provision during the remainder of the term of this lease. In case the parties of the second part should bore and discover either water, oil, or other minerals, then in that event, this grant, encumbrance or conveyance shall be in full force and effect for five years from the time of discovery of said product and as much longer as oil, water, gas or other minerals can be produced in paying quantities thereon. Whenever sales are being made of the product produced on the land above described, a settlement thereof shall be made at the end of each quarter. This grant is not intended as a mere franchise but is intended as a conveyance of the property above described for the purposes herein mentioned, and it is so understood by both parties to this agreement. In case artesian water is found on said premises, first party is to be entitled to the free use of same over and above that needed by second party in operating machinery, and in case said water is found and no oils, gases, coal

or other minerals, and said well is abandoned by second party, then and in that event, first party shall be entitled to same for his own use and benefit by paying the cost price of the piping left in the well, but in no event shall second party be at any expense whatever protecting or conducting said water to first party. It is understood between the parties to this agreement that all conditions between the parties hereunto shall extend to their heirs, executors and administrators and assigns.

"Witness our hands, this the 30th day of September, 1910. F. Hines."

Staley paid the consideration of $25 mentioned and on November 30, 1910, paid $25 for an extension on said contract, and Hines issued him a receipt as follows: "Rental Receipt, Lease No. _____. November 30th, 1910. Received of W. H. Staley ($25.00) twenty-five and no/100 dollars, being in full for the two months' rental on my land of 245 acres, more or less, in the John McNeal survey, Navarro county, Texas, from November 30th, 1910, to January 30th, 1911, in accordance with the terms of a lease to W. H. Staley, dated September 30th, 1910. [Signed] F. Hines."

In the early part of January, 1911, Staley let a contract to one Allison to drill a well on the property at once and Allison delayed. Staley urged a beginning, and on January 29, 1911, Allison agreed to begin operations for the drilling of the well and to commence the next day. Staley was to furnish the pipe; he placed two loads on the property to be used in drilling the well. On January 29th, Staley sent $25 to Hines' house, but Hines was not found and on the next day, the 30th, Staley deposited $25 to Hines' credit in the First National Bank, and at the same time mailed Hines a notice to that effect. On the same day Hines and Staley met, and had a talk about the rental that had been deposited, in which Hines was informed by Staley that said deposit had been made. Hines was also informed on the same day that Staley had hauled some pipe on the land. Hines did not repudiate the deposit nor intimate to Staley that he would not receive it until February 23, 1911. On the date last mentioned Hines wrote to Staley declining to accept the $25 deposited in the bank, and stating that Staley's time for beginning developing the property had expired, and forbidding him from entering thereon. He also wrote to the bank to return said money to Staley. On said date Hines and wife leased to appellant Witherspoon the right to develop the mineral on said land. Staley started on the work of developing and had sunk a well to the depth of 450 feet, when appellant secured a writ of injunction, which stopped proceedings. When the lower court dissolved the injunction, and before the appeal could be perfected, Staley brought in the well. After the appeal was perfected this court issued an injunction staying further proceedings.

[1] The contract herein might be denominated a conditional conveyance of the minerals contained in said land, to exist for the term of five years or as long thereafter as "oil, gas or other minerals are found in paying quantities thereon," and in case operations for the drilling of a well for minerals were begun within 60 days, otherwise the contract was subject to forfeiture, but it was further provided that such forfeiture might be prevented by Staley paying the sum of $25 every 60 days. The contract gave to Staley the right every 60 days to prevent a forfeiture by paying to Hines the sum of $25, and when paid the time for beginning operations would extend for 60 days longer. But it is insisted that Staley failed to pay to Hines the third installment of $25 within the time required by the contract to prevent a forfeiture, and thereby said contract was forfeited and became void and Hines had the right to make a valid lease to appellant.

The evidence shows that the second installment on the option was paid on November 30, 1910, by Hines one day after the time limited, as provided by the contract, from which it might have been considered by Staley that Hines was not relying on a literal construction and compliance in that regard, and that a payment within a day or so of the time would be sufficient. This idea may have been further strengthened by the wording of the receipt executed by Hines on November 30, 1910, wherein it was stated that the $25 "being in full for the two months' rental," to January 30, 1911, "in accordance with the lease." This recitation may have caused Staley to be impressed with the idea that the contract was to be construed that the term "sixty days" was equivalent to two months. But aside from this view, Staley did deposit to Hines' credit in the First National Bank, the place named in the contract authorized to receive such payment, the sum of $25 on January 30, 1911, and on that day Staley informed Hines of such deposit, which deposit was not repudiated by Hines, nor was there any intimation made by Hines to Staley that such deposit was not acceptable to him (Hines), but he remained silent until February 3, 1911, when he notified Staley that he would not accept the deposit. Under the circumstances we think it was the duty of Hines to have notified Staley when told of the deposit that he would not receive it, and then and there have declared the contract forfeited. Not having done this, we are of the opinion that Hines cannot now be heard to say that he would not accept said deposit and that the contract was forfeited on account of the failure to pay said rental in time.

[2] Witherspoon was fully informed of the situation at the time he made the contract

with Hines, and therefore he is in no better attitude than Hines.

[3] The appellant contends that the contract is unilateral, and therefore void, and cites the case of National Oil & Pipe Line Co. v. Teel, 67 S. W. 545, as exactly in point. We think there are essential differences between this and the Teel Case. The Teel Case was, as held by the court, void, being an unilateral contract. There was no definite time specified in the lease for beginning development of the property, while here the time is fixed at five years. The contract in the Teel Case did not contain a clause of conveyance as the one herein which stipulates, "This grant is not intended as a mere franchise, but is intended as a conveyance of the property above described, for the purposes herein mentioned, and it is so understood by both parties to this agreement." The Teel contract did not contain a rental option as in this case, nor had there been anything done in that case to raise any equity as in this. So we think that case not applicable to the principles that should be applied here.

The principles announced in the cases of Oil Co. v. Snyder, 106 Fed. 764, 45 C. C. A. 604, Oil Co. v. Colquitt, 28 Tex. Civ. App. 292, 69 S. W. 169, and like cases we think should control in this case, and therefore the judgment is affirmed. The restraining order heretofore granted by this court is hereby vacated.