## LEONARD v. CARUTHERS. (No. 6372.)*

(Court of Civil Appeals of Texas. Austin. Nov. 1, 1921. On Motion for Rehearing, Dec. 21, 1921.)

1. **Mines and minerals** ⬳73—Leases construed in favor of lessors.

In construing leases, contrary to the general rule, in case of doubt they should be construed in favor of the lessors.

2. **Mines and minerals** ⬳55(3) — Instrument held not to convey title to minerals, but an option to exploit lands.

An instrument construed, and *held* not to convey the title to minerals therein referred to, but to grant an option to exploit the lands for oil and other minerals.

3. **Vendor and purchaser** ⬳196—Rents not due payable to purchaser.

It is a rule of common law, enforced in Texas, that on sale of land rents not due are payable to the purchaser.

4. **Mines and minerals** ⬳55(2)—Grantee of half of minerals in lands held entitled to half the amount paid for extension of prior option given by grantors.

The owners of lands having granted an option to exploit the same for oil and other minerals, their subsequent grantee of half the minerals, subject to the option contract, is entitled to half their rights and benefits secured to them under the option contract, and hence to half the amount paid for extending the option under such contract.

Appeal from District Court, Tom Green County; C. E. Dubois, Judge.

Action by M. B. Leonard against O. A. Caruthers. From judgment for defendant, plaintiff appeals. Reversed and rendered.

Wardlaw & Elliott, of Sonora, for appellant.

Hill & Hill, of San Angelo, for appellee.

KEY, C. J. On the 5th day of June, 1918, the following instrument was executed by C. H. Evans and his wife, on the one part, and Jas. A. Weir, on the other part:

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted February 22, 1922.

"Know all men by these presents: That I, C. H. Evans, joined herein by my wife, Mrs. Mary E. Evans, of the post office of Sonora, state of Texas, hereinafter called lessor (whether one or more), for and in consideration of $1,662.90, cash in hand paid, receipt of which is hereby acknowledged, do hereby lease unto James A. Weir, hereinafter called lessee, the following described land, situated in the counties of Menard, Concho, Tom Green, and Schleicher, state of Texas [included in which description is the land in controversy], * * * all of said land aggregating 5,543 acres of land, more or less, for the purpose of prospecting for oil, gas, sulphur, and other minerals and the production of same therefrom, together with the exclusive right of ingress and egress at any time to prospect, drill, mine, and otherwise operate hereunder, and the right to erect, maintain, and remove all necessary or proper structures and appliances, including the right to pull the piping from wells, and to install, maintain, and remove all tanks and other means of storage and all pipes and other means of transportation; and subject to the royalties hereinafter mentioned, there is hereby granted and conveyed to said lessee all of the oil, gas, sulphur, and other minerals in and under said land.

"The royalties above mentioned shall be (a) on oil, a quantity equal to one-eighth of all produced and saved, the same to be delivered at the wells or to the credit of the lessor in the pipe line to which the wells may be connected; (b) on natural gas, at the rate of $200 per annum, payable quarterly, for each well producing gas exclusively, and from which gas is then being used or sold off the premises, it being understood that the lessor shall have the privilege, at the lessor's own risk and expense, of making connections and using gas from such wells free of charge for one dwelling on said land; (c) on gas produced from oil wells, when such gas is used or sold off the premises, at the rate of $10 per annum for each well while the gas is being so used or sold, and when such gas is used for the manufacture of gasoline there shall be an additional payment at the rate of $10 per annum for each well while such gas is being used for the manufacture of gasoline; (d) on sulphur, at the rate of $1 per ton for all mined and marketed from said land; (e) and on all other minerals a one-tenth of the net proceeds received from the sale of such as may be produced and marketed from said land for all purposes of development and operation.

"If operations for the drilling of an oil or gas well are not begun on said land on or before the 5th day of June, 1919, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the credit of the lessor in the First National Bank at Sonora (which shall continue as the depository, regardless of changes in ownership of the land), the sum of $1,662.90, which payment or tender may be made by the check or draft of the lessee, and, however made, shall operate to confer on the lessee the privilege of deferring the time limit for 12 months from said date. Thereafter, in like manner and upon like payments or tenders of said amount, the time limit may be further deferred for additional periods of 12 months successively, provided always that this lease cannot be kept in force by such payments in the absence of drilling operations for a longer period than five years from the date last above set forth. But nothing in this paragraph contained shall obligate the lessee, against its wish or option, to make any such payment or to drill or otherwise carry on operations hereunder. And it is understood and expressly agreed that the consideration first recited in this lease, the down cash payment, and the obligation of the grantee contained in the next ensuing paragraph hereof, shall be held to support and sustain, not only the privileges granted to the date written in this paragraph, namely, the date when this lease is to terminate unless an additional payment or tender is made, but also the lessee's option of extending that period from time to time and keeping this lease in force as aforesaid, as well as any and all other rights and privileges conferred on the lessee by this instrument.

"If during the period of this lease or the extension of the time limit for drilling and within 5 years from the date last above set forth, and prior to the discovery of oil or gas on said leased land, there shall be drilled, on adjacent land and within 200 feet of any line of said leased land, a well producing as much as 50 barrels of oil per day for 30 consecutive days, the lessee will, with reasonable diligence, begin and prosecute the drilling of a well on said leased land in a faithful effort to find and produce oil in paying quantities.

"After operations for drilling of an oil or gas well shall have been begun on said leased land, it shall not be necessary for the lessee to make any further payments in lieu of drilling operations, as provided in the second preceding paragraph hereof, in order to keep this lease in force; and during said period of five years drilling operations may be suspended from time to time, without terminating this lease, provided the lessee shall have paid or tendered, or shall then pay or tender, the amount hereinbefore mentioned for the then current period of one year, including the time of such period of one year, including the time of such suspension; and provided further that after such operations are so begun no such payment or tender shall be necessary when the operations are being carried on in good faith and the period of suspension is less than 30 days.

"If the lessee shall sink a well or shaft and discover oil, gas, sulphur, or other minerals in paying quantities in or under the above-described land, then this lease shall remain in full force and effect for 10 years from such discovery, and as much longer as oil, gas, sulphur, or other minerals shall be produced therefrom in paying quantities; and, having so discovered oil, gas, sulphur, or other minerals in paying quantities, the lessee shall be exempt from loss or forfeiture of this lease in whole or in part, except after judicial ascertainment that the lessee has failed to perform its duty and discharge its obligations hereunder and a reasonable opportunity thereafter to prevent such loss or forfeiture, and in event of final loss or forfeiture there shall be reserved to the lessee each producing well or mine with 10 acres of land surrounding the same, to be designated by the lessee.

"No well shall be drilled nearer than 200 feet to any house or barn on said land, unless

by consent of the lessor, and nothing herein contained shall deprive the lessor of the full use and enjoyment of said land, subject to the privileges and estate hereby granted, and when requested by the lessor the lessee shall bury its pipe lines so that they will not interfere with cultivation, and lessee shall be allowed to run pipe lines across the lands here leased from any other properties lessee may be developing or operating in the vicinity, the route of said pipe lines over the lands here leased to be designated by lessor, and be buried below plow depth when requested by lessor.

"If the interest owned by the lessor in said land is or shall prove to be less than the entire fee in the royalties and moneys herein provided for shall be delivered or paid to the lessor in the proportion only that the interest of the lessor bears to the entire fee.

"If the estate of either party hereto is assigned and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to the assigns and successive assigns, but no change in the ownership of the land or the rentals or royalties, by purchase or otherwise, shall be binding on the lessee until it shall have been furnished with notice and proper evidence of such change.

"In testimony whereof, this instrument is signed this 5th day of June, 1918.

　　　　"C. H. Evans,
　　　　"Mrs. Mary E. Evans,
　　　　　　　　"Grantors.
　　　　"James A. Weir,
　　　　　　　　"Grantee."

That instrument was duly acknowledged and filed for record in Menard county, on July 18, 1918, and duly recorded in the deed records of that county.

On February 3, 1919, C. H. Evans and his wife executed and delivered to M. B. Leonard seven written transfers relating to seven different tracts of land, and each was filed for record on February 27, 1919, and duly recorded in the deed records of Menard county, and they included the land involved in this litigation. The form of such conveyances was identical in each instrument, except as to the description of the land, one of which instruments reads as follows:

"The State of Texas, County of Sutton—ss.:

"Know all men by these presents: That C. H. Evans and wife, Mary E. Evans, of the county of Sutton, state of Texas, in consideration of $175 to us cash in hand paid by M. B. Leonard, the receipt of which is hereby acknowledged, have granted, sold, and conveyed, and by these presents do bargain, grant, sell, and convey, unto the said M. B. Leonard an equal one-half undivided interest in and to all the natural gas, oil, petroleum, coal, and other minerals and mineral substances in, on, and under the following described lot, tract or parcel of land lying and being situated in Menard county, Tex., and being all of the N. and E. ⅞ of section No. 5, certificate No. 1/304, original grantee, B. S. & F., containing 560 acres of land, more or less, together with the right to enter thereon open mines, drill wells, lay pipes and erect all structures and appliances necessary or convenient in searching for, pro-

curing, caring for, storing, and removing any natural gas, oil, petroleum, or other minerals or mineral substances of whatever nature and kind whatsoever that may be found thereon, or thereunder, and to erect telephone and telegraph lines for use in the business thereon together with the right to remove any and all fixtures placed thereon.

"It is expressly understood and agreed that the surface of the above-described land is conveyed only for all purposes and uses above set forth. And this conveyance is subject to the terms and provisions of a lease (if valid) executed by C. H. Evans and wife, Mary E. Evans, to James A. Weir, on the 5th day of June, 1918, and recorded in book 32, page 42 of the records of Menard county, Tex.

"To have and to hold the same unto the said M. B. Leonard his heirs, administrators, and assigns forever.

"We do hereby bind ourselves, heirs, executors, and administrators to warrant and forever defend all and singular said gas, oil, petroleum, coal, and mineral rights herein conveyed unto the said M. B. Leonard, his heirs and assigns against the lawful claim of every person claiming or to claim the same or any part thereof.

"Witness our hands, this 3d day of February, A. D. 1919.　　　　C. H. Evans.
　　　　　　　　　　　"Mary E. Evans."

(Statutory acknowledgment.)

On January 3, 1919, James A. Weir executed to W. H. Reid the following conveyance, which was filed for record May 31, 1919, and recorded in the deed records of Menard county:

"State of Texas, County of Harris—Witnesseth:

"That whereas, James A. Weir, of Harris county, Tex., is the owner of a certain oil, gas, and mineral lease covering approximately 5,543 acres of land, more or less, lying and being situated in Menard, Concho, Tom Green, and Schleicher counties, Tex., as is evidenced by a certain lease contract of date June 5, 1918, entered into by and between the said James A. Weir, on the one part, as lessee, and C. H. Evans, Mrs. Mary E. Evans, on the other part, as lessor, said lease contract duly recorded in volume 32, page 42, of the records of Menard county, Tex.; the said lands covered thereby being more particularly described as follows, to wit:

| Sur. | Cert. | Original Grantee. | Acres. | County. |
|---|---|---|---|---|
| 14 | 1286 | G., H. & S. A. Ry. Co. | 661¼ | Menard |
| 1 | 245 | Brooks & Burleson | 640 | Menard |
| 4 | 1425 | B. & S. F. | 640 | Menard |
| 5 | 1/304 | B. & S. F. N. & E. ⅞ | 560 | Menard |
| 132 | 34 | E. L. & R. R. Ry. Co. | 398½ | Menard |
| 133 | 176 | Do. | 398½ | Menard |
| 134 | 176 | Do. | 398½ | Menard & Schleicher |
| 128 | 175 | Do. | 640 | Menard & Concho |
| 15 | 2/19 | J. Poitivent | 601 | Menard & Concho |
| 16 | 2/19 | Do. | 605 | Menard, Concho, Tom Green & Schleicher |

"Section 5 above described contains 640 acres, but the S. W. ⅛, being 80 acres, belongs to others and the said part is excepted from this lease, and the said portion herein excepted is 950 varas long from north to south and

475 varas wide from east to west. The remainder of the surveys above mentioned are whole surveys, and all of the land belonging to them are included in this lease. All of said land aggregating 5,543 acres of land, more or less.

"And whereas, for a valuable consideration, as hereinafter set forth, the said James A. Weir has this day sold, assigned, and conveyed unto W. H. Reid, of New York, N. Y., his heirs, administrators, and assigns, all right, title, and interest belonging to the said James A. Weir in and to the above-described lease and contract, and it is the desire of the said James A. Weir and said W. H. Reid that the said sale be formally evidenced.

"Now, therefore, for and in consideration of the sum of $100 to him, the said James A. Weir, cash in hand paid by said W. H. Reid, the receipt of which is hereby fully acknowledged, and other valuable considerations paid by said W. H. Reid to the said James A. Weir, receipt of which is hereby fully acknowledged, the said James A. Weir does hereby sell, assign, and set over unto the said W. H. Reid, his heirs, administrators, and assigns, all right, title, and interest of said James A. Weir in and to the above-described oil, gas, and mineral lease and contract; the said W. H. Reid hereby acquiring all right and interest inuring or that may inure to the said James A. Weir under and by virtue of the aforesaid oil, gas, and mineral lease and contract and its assignment as aforesaid.

"To have and to hold the same unto the said W. H. Reid, his heirs, administrators, and assigns forever.

"In testimony whereof, witness my hand at Houston, Tex., this the 3d day of January, A. D. 1919.　　　　　　　　James A. Weir."

(Acknowledgment Statutory.)

M. B. Leonard brought this suit against O. A. Caruthers, partly in the form of trespass to try title, but also containing averments upon which he sought to recover from Caruthers one-half of the $1,662.90 collected by him from the assignee of James A. Weir; and from a judgment in favor of the defendant, Caruthers, the plaintiff, Leonard, has appealed. Both parties claim under C. H. Evans and wife.

The trial court filed the following findings of fact and conclusions of law. The findings of fact are not challenged.

"(1) I find that on the 5th day of June, 1918, C. H. Evans was the owner in fee simple of the following described lands situated in the counties of Menard, Schleicher, Concho, and Tom Green, to wit:

| Sec. | Blk. | Cert. | Grantee. | Acres. | County. |
|---|---|---|---|---|---|
| 15 | | 2/19 | J. Poitivent | 640 | Menard & Concho |
| 128 | | 175 | E. L. & R. R. Ry. Co. | 640 | Menard & Concho |
| 14 | B | 1286 | G., H. & S. A. Ry. Co. | 640 | Menard |
| 4 | C | 1425 | B. S. & F. | 640 | Menard |
| 132 | | 34 | E. L. & R. R. Ry. Co. | 398.5 | Menard |
| 134 | | 176 | E. L. & R. R. Ry. Co. | 398½ | Menard & Schleicher |
| 15 | | 2/19 | J. Poitivent | 601 | Menard & Concho |
| 133 | | 176 | E. L. & R. R. Ry. Co. | 398½ | Menard |
| 1 | | 345 | B. & B. | 640 | Menard |

"Also: East one-half and N. W. ¼ and W. ½ of S. W. ¼ of section 5, block C, certificate 1/304, B. S. & F., 560 acres, Menard county.

"(2) I find that on said date he executed to James A. Weir an oil and gas lease on all of said lands, together with a grant and conveyance of all of the oil, gas, sulphur, and other minerals in and under said lands.

"(3) I find that the lease of the surface, together with the conveyance of the oil, gas, sulphur, and other minerals in and under said lands, was made on condition subsequent that the lessee or his assignees would prospect, drill, and develop the gas, oil, and other minerals in and under said lands, and was to pay a royalty from such productions to the owner of the land as follows:

"(a) On oil, a quantity equal to one-eighth of all produced and saved.

"(b) On natural gas, at the rate of $200 per annum, payable quarterly, for each well producing gas exclusively, and from which gas is then being used or sold off the premises.

"(c) On gas produced from oil wells, when such gas is used or sold off the premises, at the rate of $10 per annum for each well while the gas is being so sold or used.

"(d) On sulphur, at the rate of $1 per ton for all mined and marketed from said land.

"(e) On all other minerals, one-tenth of the net proceeds received from the sale of such as may be produced and marketed from said land.

"(4) I find that as a consideration for said lease and conveyance the said Weir paid to said Evans at the time of executing the contract the sum of $1,662.90 and that, if operations were not begun for the development of said land within 12 months from the date of said lease and conveyance, the contract should terminate, unless the lessee or his assigns paid to the owner of the land, on or before the expiration of the first 12 months' time limit, a like sum of $1,662.90, and which payment when made should operate to confer on the lessee or his assigns the privilege of deferring the time limit for 12 months for the beginning of operations, and that thereafter in like manner and upon like payments of the same amount the time limit would be further deferred for additional periods of 12 months successively, but such payment would not keep said contract and conveyance in force for a longer period than 5 years from its date in the absence of drilling operations.

"(5) I find that by the terms of said lease and conveyance aforesaid, that in the event of development work and production of the oil, gas, and other minerals, said lease contract would remain in full force and effect for 10 years from the discovery and for such longer time as gas, oil, and other minerals should be produced therefrom in paying quantities.

"(6) I find that the condition subsequent under which said lease of the lands and the conveyance of the gas, oil, and other minerals in and under the same was made is indefinite and uncertain and may never terminate.

"(7) I find that the original lessee, James A. Weir, on the 3d day of January, 1919, transferred and assigned said lease contract and conveyance to W. H. Reid, conveying to him all of his right, title, claim, and interest in the lands.

"(8) I find that on or before the 5th day of June, 1919, the assignee of said Weir paid to

C. H. Evans, the original lessor, the sum of $1,662.90 for the privilege of extending the time limit of said lease and conveyance for 12 months from June 5, 1919.

"(9) I find that on or before the 5th day of June, 1920, the said assignee of the Weir lease paid into the First National Bank of Sonora, Tex., the depository designated in said contract, the sum of $1,662.90 for the privilege of extending the time limit of said lease and conveyance for 12 months from said date.

"(10) I find that upon the 28th day of June, 1919, the said C. H. Evans contracted to convey the fee in said land to Paul Willoughby and that simultaneously with said contract the said Paul Willoughby went into possession of said land.

"(11) I find that on the 4th day of October, 1919, the said C. H. Evans and wife conveyed by full warranty deed, for a valuable consideration then paid, the said lands to the said Paul Willoughby in fee simple in accordance with said contract, and that thereby the said Willoughby became the owner in fee simple of all of said lands.

"(12) I find that subsequent to June 28, 1919, said Paul Willoughby contracted to sell and convey all of said lands to the defendant, O. A. Caruthers, and that by a full warranty deed for a valuable consideration then paid, dated December 12, 1919, the said Paul Willoughby, joined by his wife, conveyed all said lands to the defendant, O. A. Caruthers, and he thereby became the owner in fee simple thereof.

"(13) I find that the said C. H. Evans and wife, after executing the lease and conveyance to James A. Weir and on, to wit, February 3, 1919, conveyed to the plaintiff, M. B. Leonard, his (the said Evans') reversionary interest in and to the natural gas, oil, petroleum, and other minerals in and under the following tracts of said lands, to wit:

| Sur. | Cert. | Original Grantee. | Acres. | County. |
|---|---|---|---|---|
| 15 | 2/19 | J. Poitivent | 601 | Menard & Concho |
| 132 | 34 | E. L. & R. R. Ry. Co. | 398½ | Menard |
| 16 | 2/19 | J. Poitivent | 605 | Menard, Schleicher, Tom G. |
| 134 | 176 | E. L. & R. R. Ry. Co. | 398½ | Menard & Schleicher |
| NE 7/85 | 1/304 | B. S. & F. | 560 | Menard |
| 128 | 175 | E. L. & R. R. Ry. Co. | 640 | Menard & Concho |
| 1 | 245 | Brooks & Burleson | 640 | Menard |

"(14) I find that said conveyance to plaintiff M. B. Leonard, by said Evans and wife was made subject to the lease and conveyance previously made by them to the said James A. Weir.

"(15) I find that neither the said Paul Willoughby nor the said defendant, O. A. Caruthers at the time of the deeds and conveyance to them, had any notice of any rights of plaintiff in and to said lands or any minerals therein, except as disclosed by the records.

"(16) I find that the $1,662.90 paid by the assignee of the Weir lease in the First National Bank of Sonora, on or prior to the 5th day of June, 1920, was thereafter paid by said bank to the defendant, O. A. Caruthers.

"(17) I find that, prior to the payment of said sum of $1,662.90 into the said bank by the assignee of the Weir lease, the said defendant, O. A. Caruthers, in compliance with said Weir contract, had filed with said assignee a copy

236 S.W.—13

of the deeds conveying the lands from C. H. Evans and wife and vesting the fee-simple title in defendant thereto.

"(18) I find that the plaintiff made demand upon the defendant for one-half of the proportional amount of the money paid by the assignee of the Weir lease to said bank and by said bank to defendant at 30 cents per acre, amounting to $576.45, and that defendant refused to pay the same to plaintiff.

"(19) I find that there has been no drilling or other development work done upon said lands under the lease and conveyance from Evans to Weir, nor any development work done by plaintiff under the said conveyance to him, and that there has been no gas, oil, petroleum, sulphur, or other minerals produced from said lands.

"(20) I find that the $1,662.90 paid by the assignee of the Weir lease to defendant was not for any productions from said land, but was for the privilege only of extending the time limit within which operations were to be begun.

"(21) I find that the said lease and conveyance executed by said C. H. Evans and wife to James A. Weir is still in full force and effect.

"(22) I find that the conveyance of C. H. Evans and wife to plaintiff, M. B. Leonard, was only for the reversionary interest that he might have in the natural gas, oil, etc., in and under the lands described in said conveyance, and that said conveyance did not transfer or assign to him any of the money paid and to be paid under the Weir lease in order to extend the time limit thereof for the beginning of operations.

### "Conclusions of Law.

"(1) I find that the conveyance by said C. H. Evans and wife to plaintiff, M. B. Leonard, of their reversionary interest in the natural gas, oil, etc., in and under the lands in said transfer described, was and is null and void and inoperative, and vested in the plaintiff no interest or title to said natural gas, oil, etc.

"(2) I find that the plaintiff by his said transfer and conveyance from C. H. Evans and wife did not acquire any right, title, or interest in the moneys paid by the assignee of the Weir lease for the privilege of extending the time limit for beginning operations under said lease.

"(3) I find that the $1,662.90 paid by the assignee of the Weir lease to the First National Bank of Sonora and by it to defendant, O. A. Caruthers, belongs to the said Caruthers, and that the same was properly paid to him.

"Judgment is therefore entered for the defendant in accordance with his prayer."

### Opinion.

[1] No attempt will be made to consider separately the assignments of error. The constructions placed by this court upon the first two instruments heretofore set out in full are decisive of the rights of the parties, and render it unnecessary to consider other questions. Also, it should perhaps be kept in mind that in construing mineral leases, contrary to the general rule, it is held that in case of doubt they should be construed in favor of the lessors (Hitson v. Gilman, 220 S. W. 144, and authorities there cited); and perhaps and for a similar reason the same

rule should prevail in construing the first instrument hereafter considered in this case, because it is designated by the parties as a lease, Evans and his wife as lessors, and Weir as lessee.

It is contended, on behalf of appellant, that the instrument executed by C. H. Evans and his wife to James A. Weir did not vest title in the latter to the minerals therein referred to, but constituted a lease contract, by which he could acquire title by doing certain things, the performance of which were conditions precedent to the vesting of any title in him; and that thereafter, when Evans and his wife executed the deed of conveyance to appellant, Leonard, the latter became a joint owner with Evans and his wife, and as such was entitled to one-half of the lease money thereafter paid to appellee, Caruthers, who subsequently acquired the Evans title. On the other hand, it is contended by appellee, Caruthers, that the instrument executed June 5, 1918, and signed by C. H. Evans and wife and James A. Weir, vested absolute title in Weir to all of the minerals referred to, except one-eighth thereof reserved as royalty; and therefore the conveyance subsequently made by Evans and his wife to appellant, Leonard, which purported to convey a one-half interest in those minerals, did not have that effect, because of the fact that the grantors had previously, by the instrument dated June 5, 1918, divested themselves of title to said minerals and vested title thereto in James A. Weir.

[2] Thus it will be seen that the proper construction of the instrument last referred to is an important question in this case. The question is: Does that instrument convey title to the minerals therein referred to, or does it merely grant to James A. Weir and his assigns an option to exploit the lands therein described for oil or other minerals? After extended and careful consideration, we have reached the conclusion that the latter is the proper construction to be placed upon the instrument.

The only point of difference between this instrument and those construed in Pipe Line Co. v. Teel, 67 S. W. 545; Id., 95 Tex. 586, 68 S. W. 979; Owens v. Corsicana Petroleum Co., 169 S. W. 196; Hunter v. Gulf Production Co., 220 S. W. 164; Petroleum Co. v. Owens, 110 Tex. 568, 222 S. W. 154; and O'Neil v. Sun Co., 58 Tex. Civ. App. 167, 123 S. W. 172, is the fact that in those cases, or in some of them, if not all, the consideration paid when the contract was made was only nominal, while in this case it was a substantial sum.

In the Teel Case, the pertinent part of the instruments under consideration read as follows:

"Have granted, bargained, sold, and conveyed, and do by these presents grant, bargain, sell, and convey, unto the said party of the second part, their heirs and assigns, all the oils and gas and coal and other minerals in and under" certain land therein described, "together with the right of ingress and egress at all times for the purpose of drilling, mining and operating for oil, gas, water, coal, and other minerals," etc., "reserving, however, to first party one-tenth of all oil produced and saved from said premises to be delivered in the pipe line to the credit of the first party free of charge. * * * To have and to hold the above premises unto the parties of the second part, their heirs and assigns, on the following conditions: * * * In case operation for either drilling a well for oil or mining for coal or other minerals is not begun and prosecuted with due diligence within two years from this date, then this grant shall immediately become null and void as to both parties; provided, that second party may prevent such forfeiture from year to year and no longer, by paying in advance $100 at his residence, until such well is completed, or until shipments from such mine have begun. * * *"

In construing those instruments, the San Antonio Court of Civil Appeals said:

"These instruments may be treated as options, or as conveyances. Until acted upon, they were really options, or in the nature of options. The form in which they are given is not material. * * * Appellants contend that these were executed sales of an interest in land, and vested title, subject to be defeated on conditions subsequent. A deed reciting the consideration of $1, and providing that the grantee should within a certain time pay a certain sum, or do a certain thing, otherwise it should become void, would doubtless constitute a binding contract on the grantor. So might it be said of the instruments in question if at some ascertainable time it devolved upon the purchasers to perform or not perform the consideration or conditions contemplated. The real consideration of these instruments was not the recited $1, nor the $100 that after the two years might be paid, in order that they might keep it going from year to year, but the beginning and prosecuting with due diligence of wells for oil or minerals upon the land; in other words, the development of the property for oils and minerals in the near future. This was the clear purpose of the grant."

That case reached the Supreme Court, where the decision of the Court of Civil Appeals was sustained, and Chief Justice Gaines, in writing the opinion of the Supreme Court said:

"In order to decide this question, it is necessary to determine the nature of the contracts under which the plaintiffs in error claim. Viewing the written agreement in the light most favorable to these parties, they do not pass an interest in the lands, but are mere contracts for an option by which they may acquire such interest."

Aside from the amount of the consideration, the instrument in this case is more like a lease contract and less like a conveyance than those in the Teel Case. In this case the instrument is frequently referred to as a lease, and the parties as lessor and lessee,

while each instrument in the Teel Case was designated a "grant." The instruments in that case contained habendum clauses, with no time set for defeasance, while in this case the instrument contains no habendum clause, and a time is designated for defeasance, with the provision, which was not in the Teel Case, that nothing therein contained shall obligate the lessee to perform any act thereunder.

A similar instrument was construed by the Supreme Court in Petroleum Co. v. Owens, supra, and, among other things, the court, speaking through Chief Justice Phillips, said:

"The finding of oil upon the land was merely prospective. For a valuable consideration, satisfactory to themselves, the grantors by the instrument gave the grantee the right to prospect upon the land for a definite period; the right to seven-eighths of the oil if found. * * *"

These decisions are in point, and sustain appellant's contention, unless it be that they are overruled or modified by the opinion of the Supreme Court in Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989. The instruments referred to in that case were held to vest title, but instead of overruling or modifying the cases we have referred to, the opinion of the Supreme Court points out the distinction between those cases and the Daugherty Case. In the latter case the instruments not only purported to "grant, bargain, sell, and convey" to the grantee all the oil, gas, coal, and other minerals in and under the land referred to, together with the exclusive right of ingress and egress at all times for the purpose of drilling, mining, etc., but each contained a habendum clause, and also the following stipulation:

"This lease is not intended as a mere franchise, but is intended as a conveyance of the property and privileges above described for the purposes herein mentioned, and it is so understood by all parties hereto."

In that case, after holding that the instruments therein involved conveyed title to the minerals, the Supreme Court said:

"It is assumed in the argument that because of the decision of this court in Oil & Pipe Line Co. v. Teel, 95 Tex. 586, 68 S. W. 979, and its refusal of writs of error in the cases of O'Neil v. Sun Co., 123 S. W. 172, and Witherspoon v. Staley, 156 S. W. 556, it is committed to the proposition that oil and gas in place are not susceptible of grant, and their conveyance creates no property interest in the land, but only a bare right or privilege to go on the land and mine for such minerals and reduce them to possession. The case of Southern Oil Co. v. Colquitt, 28 Tex. Civ. App. 292, 69 S. W. 169, involved the question of whether the proper joinder of the wife was necessary in a conveyance of such minerals in place under a tract constituting a homestead, together with the right to make use of the land for the purpose of their production from the earth. The Court of Civil Appeals for the Fifth District held that it was for the reason that such a conveyance amounted to the grant of an interest in the land itself. This court refused writ of error. It could have done so only under the view that the interest created by the instrument was an interest in the realty itself, requiring for its validity the joinder of the wife because of the homestead character of the realty. In O'Neil v. Sun Company the question was the right of the Sun Company to oil from a well bored upon a tract to which it held a clear and unforfeited right under a lease. The Court of Civil Appeals for the Fourth District held that the instrument, though it purported to grant and convey the title to the oil and gas under the land, only conferred a right to exploit the ground and acquire title to the oil by its extraction from it. Under the facts of the case it was manifest that the Sun Company was entitled to the oil, whatever might be the technical classification of its right. There are essential elements of difference between the contract considered in that case and the instruments here under review. It possessed all of the characteristics of a contract for exploitation, with the right to take the oil and gas in the ground, with such right depending upon the company's performance of the contract. Here the instruments express a present grant of the minerals in place for a consideration which was valuable and independent of any obligation resting upon the grantee, emphasized by the parties as a conveyance of property and not the grant of a mere franchise by a distinct provision asserting such to be its character. The same distinction exists with respect to the instrument considered in Witherspoon v. Staley, as well as that reviewed in Oil & Pipe Line Co. v. Teel. In the former case the Court of Civil Appeals held that a forfeiture of the right created under the contract had clearly accrued. We concurred in that view and upon that ground refused the writ of error. In Oil & Pipe Line Co. v. Teel the contract was supported by only a nominal consideration other than the mere promise of the lessee to perform certain acts, but for the performance of which he was not bound. The contract was construed properly as the creation of a mere option which permitted the acquisition of an interest on performance of conditions—a mere optional right to acquire an interest in land, a character of instrument plainly distinguishable from those here presented."

While in the case at bar the instrument involved shows that a consideration amounting to about 30 cents per acre was paid at the time the contract was made, we are of the opinion that such payment was not made for the purpose of acquiring absolute title at that time to such minerals as might be under the surface, but that it was made for the purpose of securing an exclusive option or right for a period of one year to explore the land for minerals, and if any were obtained they should then, with the exception of the one-eighth designated as royalty, become the property of Weir, the lessee, or his grantees. The fact that the instrument stipulated that, if the lessee desired to extend his option to explore for minerals beyond the period of one year, he was required to pay the same amount that he had already paid when the contract was made, indicates that the par-

ties regarded the option as worth the cash payment that was made, and that such payment was not made for the purpose of acquiring title at that time to the minerals referred to, but for the purpose of obtaining the option. So it is, and for the reasons stated, we conclude that the instrument under consideration did not convey title to the minerals, but merely secured to Weir and his assigns the privilege of acquiring title in the future by doing certain things which have not been done.

[3, 4] This brings us to a consideration of the instrument under which appellant claims title to an undivided one-half interest in the minerals referred to, and the right to collect from Weir and his assignees one-half of the money subsequently paid by them under the lease contract with Evans and his wife. There is no room for doubt that the conveyances from Evans and his wife to appellant, Leonard, immediately vested in the latter legal title to an undivided half of the minerals in question, subject, however, to the rights of Weir and his grantees under the previous contract between him and Evans and his wife. Did such acquisition of the title and such ownership have the effect in law of substituting Leonard to one-half of the rights and benefits secured to Evans and his wife, by the contract between them and Weir? Our conclusion is that this question must be answered in the affirmative. It is a rule of the common law, which has been applied and enforced in this state, that, upon a sale of land, rents not due upon it are payable to the purchaser. Porter v. Sweeney, 61 Tex. 216; Hearne v. Lewis, 78 Tex. 276, 14 S. W. 572. That doctrine has been held by this court not to apply, when, before the sale, the rents have been severed by an assignment of such rents, or of notes given for their payment. Mortgage & Trust Co. v. Gill, 8 Tex. Civ. App. 358, 27 S. W. 835.

That question is not involved in this case. But, if the payment, which was subsequently made by Weir or his assignee, to appellee, Caruthers, who holds under a conveyance from Evans and his wife made subsequent to their conveyance to appellant, Leonard, is to be considered as a payment of rent, then the two decisions by our Supreme Court just referred to will control, and require a decision in appellant's favor. But we think it is immaterial whether or not such payment be regarded as rent. The important fact is that it was the consideration for the extension of the option to explore the lands for minerals; and we are of the opinion that, when Evans and his wife sold and conveyed to Leonard an undivided half interest in the minerals, the intention was to make him a co-owner with themselves of the minerals, with equal rights with them under the contract previously made by Evans and his wife with Weir. It may be true that, if the stipulation in the conveyance from Evans and his wife to appellant, to the effect that it is "subject to the terms and provisions of a lease executed by C. H. Evans and wife to James A. Weir, on the 5th day of June, 1918," should be literally construed, Evans and his wife would thereafter have the right, as stipulated in that contract to collect all subsequent payments of rent or lease money, because, by the terms of that instrument, it was so stipulated. But we do not think the contract should be given that construction. The stipulation referred to must be considered in connection with the entire instrument, the primary purpose of which was to vest in appellant, Leonard, title to a half interest in the minerals. But, if that stipulation should be construed as reserving to Evans and his wife the right to collect all that might become due under their contract with Weir, the result might be that appellant, Leonard, would acquire nothing by his deed. In other words, the contract between Evans and his wife and Weir not only stipulated that future rentals, or the consideration for an extension of the contract, should be paid to Evans and his wife, but it also provided that if minerals were procured, one-eighth thereof was to be delivered to them. Now, if the stipulation under consideration had the effect of reserving to Evans and his wife the right to collect the consideration for an extension of the contract made with Weir, it also had the effect of reserving to them the one-eighth royalty which might accrue when minerals were found; and, if Weir or his assignees, exercising the rights which they had under the contract, found minerals in paying quantities, and delivered to Evans and wife the entire royalty therein provided for, and paid to them the entire consideration for an extension of the contract, then appellant, Leonard, would acquire nothing by his conveyance of absolute title to one-half of the minerals. To give the contract that effect would be to sacrifice to mere literalism the manifest purpose and intention of the grantors to convey to the grantee absolute title to the property referred to. We are of the opinion that the clause in the conveyance, stating that it is subject to the terms and provisions of the lease, was intended to give direct notice to appellant, Leonard, of the existence of the contract between Evans and his wife and Weir, and the fact that it secured to Weir, the lessee, certain rights concerning the minerals which the grantors were conveying to Leonard, and binding him by contract, in the same manner that the grantors were bound in reference to the rights of Weir, the lessee.

So, upon consideration of the question in all of its aspects, we have reached the conclusion that the conveyance from Evans and his wife to the appellant, Leonard, entitled him to one-half of the money subsequently paid by Weir, or his assignees, as lessees, under

their contract with Evans and his wife, for the purpose of extending their option secured by the contract. The amount so paid to appellee was $1,662.90, one-half of which is $831.45, and judgment is rendered for appellant, Leonard, and against appellee, Caruthers, for that sum.

Reversed and rendered.

## On Motion for Rehearing.

In rendering judgment in this case, we overlooked the fact that the plaintiff did not sue for one-half of the amount collected by the defendant in order to extend the lease, but only for one-half of $1,152.90, which was one-half of 30 cents per acre on 3,843 acres. The amount so claimed is $576.45; and therefore the judgment heretofore rendered by this court in favor of appellant and against appellee for $831.45 will be reformed so as to limit appellant's recovery to $576.45.

The other questions presented in appellee's motion for rehearing and written argument in support of that motion have been duly considered, but our conclusion is that, our former decision correctly disposed of those questions; and therefore, except as above stated, the motion is overruled.

Motion granted in part, and in part overruled.