HENDERSON et al. v. CHESLEY et al.
(No. 6836.)

(Court of Civil Appeals of Texas. April 8, 1925. Rehearing Denied May 13, 1925.)

1. Partition ⬉12(1) — Owner of undivided one-half interest in mineral rights and owner of fee and remaining mineral rights held "joint owners," within partition statute.

Plaintiff, owning undivided one-half interest in mineral rights to land in question, and defendant, owning fee title and remaining undivided one-half interest in mineral rights, their interest being coextensive with entire tract of land, held to be "joint owners" thereof, within partition statute, Rev. St. art. 6096, as amended by Acts 35th Leg. (1917) c. 105, § 1, being Vernon's Ann. Civ. St. Supp. 1918, art. 6096

(citing Words and Phrases, Second Series, "Joint Ownership"; "Owner").

2. Mines and minerals ⬉48—Minerals in place are an interest in real estate.

Minerals in place are part of and constitute an interest in real estate.

3. Partition ⬉12(1)—Owner of undivided interest in mineral rights has a separate and distinct "interest" in land, authorizing partition.

In view of fact that mineral rights constitute part of realty, and create an estate of freehold, and are capable of being severed from fee, held, that plaintiffs, owning undivided one-half interest in mineral rights, have such a separate and distinct "interest" in land that the partition statute, Rev. St. art. 6096, as amended by Acts 35th Leg. (1917) c. 105, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 6096), authorizes a partition of it.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interest.]

4. Mines and minerals ⬉55(6)—Owner of undivided interest in mineral rights entitled to possession, with right to take them from ground.

One owning an undivided interest in mineral rights in tract of land is entitled to possession, with right to take them from the ground.

5. Partition ⬉77(1)—Law favors partition in kind.

The law favors a partition in kind, rather than a sale with partition of proceeds.

6. Partition ⬉92—In partitioning undivided interest in mineral rights, assumed that each acre contains equal amount of minerals.

In suit under Rev. St. art. 6096, as amended by Acts 35th Leg. (1917) c. 105, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 6096), by owner of undivided one-half interest in mineral rights, for partition, where there has been no development or exploration for minerals of any kind, court should assume for purpose of partition that each acre of land contains an equal amount of minerals, and partition by dividing surface.

7. Partition ⬉12(1)—Owner of undivided one-half interest in mineral rights held to have sufficient interest to compel partition.

The test of right to compel partition, under Rev. St. art. 6096, as amended by Acts 35th Leg. (1917) c. 105, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 6096), is that interest of joint owners generally extends to whole tract of land, which interests are capable of being severed from fee, with present right of owner's to joint possession, and plaintiffs, owning undivided one-half interest in mineral rights, are entitled to partition under such test, as against defendants, owning fee title and remaining interest in mineral rights; their interest being coextensive with entire tract of land.

8. Partition ⬉11—Partition statute held to have authorized partition of mineral rights, both before and after 1917 amendment.

Rev. St. art. 6096, relating to partition, having authorized partition of mineral rights,

---

both before and after its amendment by Acts 35th Leg. (1917) c. 105, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 6096), question of such statute being violative of Const. art. 1, § 16, relating to retroactivities, is not involved.

**9. Partition ⬗23 — Defendants, making improvements on land, knowing of plaintiff's interest in mineral rights, not entitled to defeat plaintiff's right to partition thereof.**

Where defendants, owning fee title to tract in question and an undivided one-half interest in mineral rights therein, made improvements thereon, knowing of plaintiff's right to possession of surface for purpose of discovering and reducing minerals to possession by reason of plaintiff's ownership of remaining mineral rights, *held*, that defendants are not entitled to defeat partition under Rev. St. art. 6096, as amended by Acts 35th Leg. (1917) c. 105, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 6096), especially where it was not shown that division of surface for partition of mineral rights would interfere with use of improvements or render partition difficult.

Appeal from District Court, Coleman County; J. P. Woodward, Judge.

Partition suit by Margaret E. Chesley and others against Upton Henderson and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Snodgrass, Dibrell & Snodgrass and J. B. Dibrell, Jr., all of Coleman, for appellants.

Critz & Woodward, of Coleman, for appellees.

BLAIR, J. This appeal is from a judgment decreeing a partition in kind between appellants and appellees of all the coal, oil, natural gas, valuable stones, and all other minerals and mineral rights whatsoever existing in, on, and under a certain 1,107-acre tract of land in Coleman county, Tex.; also appointing three commissioners to make the division and report the same to the next term of the court. The cause was tried to the court without a jury upon substantially the following agreed statement of facts:

Appellants own the fee to the land and have used it for many years for grazing and agricultural purposes. They own the fee by purchase, and also own a one-half undivided interest in the aforesaid minerals, acquired as an incident to the fee-simple title. Appellees own an undivided one-half interest in and to the mineral rights; they and their predecessor in title having acquired this interest many years prior to appellant's purchase of the fee. By two suits, one in 1906 and the other in 1920, appellees and their predecessor in title have established against appellants their undivided one-half interest in these mineral rights in and to the land, and in each of these suits appellants have been decreed the owners of the fee, except as to this interest of appellees.

Since the first suit in 1906 appellants have placed 550 acres of the land in cultivation, divided the tract by fences, and have built five houses thereon. These improvements were made prior to the enactment of chapter 105, Acts 35th Legislature (1917), amending article 6096, R. S. (Vernon's Ann. Civ. St. Supp. 1918, art. 6096), and the interests of all parties to this suit in the land or mineral rights were acquired prior to this legislation, and of course these improvements were made subsequent to the date appellees acquired their undivided one-half interest in and to the mineral rights.

The land has never been explored for coal, oil, natural gas, valuable stones, or other minerals. It is not certainly known whether any of the aforesaid minerals exist in, on, or under said land, and it cannot be determined in what part of said land minerals exist, or in what way they are distributed in and under said land.

The trial court held that article 6096, R. S., authorized the partition of the aforesaid mineral rights. Originally article 6096 read:

"Any joint owner or claimant of any real estate or of any interest therein, may compel a partition thereof between the other joint owners or claimants thereof, in the manner provided in the succeeding articles of this chapter."

As amended in 1917 (Vernon's Ann. Civ. St. Supp. 1918, art. 6096), it reads:

"Any joint owner or claimant of any real estate or of any interest therein or of any mineral, coal, petroleum, or gas lands, whether held in fee or by lease or otherwise, may compel a partition thereof between the other joint owners or claimants thereof in the manner provided in the succeeding articles of this chapter."

The sole question for our determination here is whether or not, under the facts of this case, appellees are authorized to compel a statutory partition in kind of the aforesaid mineral rights. Appellants contend that the partition decreed by the trial court is not authorized for the following principal reasons:

(1) That appellants and appellees are not joint owners of such a separate and distinct interest in the land in the sense that the statute will compel a partition.

(2) That, since no exploration has been made, the extent, value, and location of the minerals sought to be partitioned are all unknown, and are incapable of ascertainment, and no partition in kind can be lawfully had, and that, if any partition could be had under these circumstances, it could only be accomplished by a sale of the estate with partition of the proceeds.

(3) That the interests or estates are not of equal dignity, and cannot be partitioned.

(4) That since all parties acquired their interest in the land prior to the enactment of the 1917 amendment to article 6096, R. S., no

---

⬗For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

partition could be compelled under it, as contravening the retroactive clause of the Constitution.

Other contentions are made by appellants why the partition should not be made, which will be discussed along with the above general propositions. A review of the history of statutory partition in Texas has materially aided us in the conclusion that the partition in this case is authorized, which, briefly stated, is as follows:

On February 5, 1840 (Acts 1840, p. 71), our first partition statutes were enacted. Section 1 of that act authorized part owners of estates of inheritance to partition, and part owners of life estates or of estates for a term of years were also authorized to partition with those holding estates of inheritance or of freehold, provided such partition was not prejudicial to the estates in reversion or remainder. Sections 2 and 3 of that act provided a statutory mode or method of partition. Paschal's Digest, art. 4707. These statutes were not restrictive, as partition upon equitable principles was then recognized by our courts without statutory aid. Payne v. Benham, 16 Tex. 368; Grassmeyer v. Beeson, 18 Tex. 769, 70 Am. Dec. 309. On February 5, 1858, sections 2 and 3 of the act of 1840 were repealed, leaving the courts to enforce partition upon the principles of equity or other methods then known to the law. In 1879 the codifiers rewrote the entire partition laws, at which time the original article 6096, supra, was enacted and has since been the law, except the 1917 amendment, supra, which merely added the right to partition minerals by name. The 1879 statutes also provided a statutory mode or method of partition; but they, like the former acts, are not restrictive, and resort may still be had to a partition upon equitable principles without the aid of these statutes. Tieman v. Baker, 63 Tex. 641; Keener v. Moss, 66 Tex. 188, 18 S. W. 447.

It will be noted from this history that statutory partition, limited at first to estates of inheritance, life estates, and estates for a term of years, is now only limited that the partitioners be joint owners of the real estate, "or of any interest therein." Our courts have construed these statutes in their broadest sense. In Williamson v. McElroy (Tex. Civ. App.) 155 S. W. 1000, the court said:

"The right of a joint owner or claimant of any estate to compel a partition thereof between the other joint owners or claimants 'is recognized by our statute in the broadest terms.' Article 3606, Rev. Stats. 1895; article 6096, Rev. Stats. 1911; Morris v. Morris, 45 Tex. Civ. App. 60, 99 S. W. 872."

A definition of partition by the Supreme Court has also materially aided us in the conclusion that partition is authorized in this case. In the case of Hudgins v. Sansom, 72 Tex. 229, 10 S. W. 104, the Supreme Court said:

" 'Partition' * * * means the act or proceeding through which two or more co-owners cause the thing to be partitioned to be divided into as many shares as there are owners, and which vests in each of such persons a specific part with the right to possess it free from a like right in other persons who before partition had an equal right to possess."

In the case of Tieman v. Baker, 63 Tex. 643, the Supreme Court held:

"The very purpose of partition is to enable one, holding or entitled to hold with others an undivided possession, to sever that possession and right, and thenceforth to hold an exclusive possession of a specific part of the property, which before partition all the co-owners had the equal right to possess."

With these preliminary statements of the history of statutory partition, and of the broad construction placed upon the right to partition under these statutes by our courts, and of the definition of partition in our minds, we proceed to a discussion of the questions raised by appellants.

[1] It is first contended that the parties here are not joint owners of such a separate and distinct estate in the land that the statute will authorize the partition. Aside from the specific right to partition minerals given by the 1917 amendment, the statute in question requires three necessary requisites to a forced partition: First, the partitioners must be joint owners; second, of the land, or of any interest therein; and, third, the party seeking the partition must have an equal right to possession with the other joint owners. 3 Words and Phrases, Second Series, p. 845, gives the following definitions of the word "owner":

" 'To own' is defined 'to hold as property; to have a legal or rightful title to; to have; to possess.' And an 'owner' is 'one who owns; a rightful proprietor.' An 'owner' is not necessarily one owning the fee simple or one having in the property the highest estate it will admit of. One having a lesser estate may be an owner, and, indeed, there may be different estates in the same property vested in different persons, and each be an owner thereof. United States v. Ninety-Nine Diamonds, 139 Fed. 961, 971, 72 C. C. A. 9, 2 L. R. A. (N. S.) 185 (quoting Baltimore & O. R. Co. v. Walker, 16 N. E. 475, 480, 45 Ohio St. 577, 585); Jones v. State, 70 N. E. 952, 954, 70 Ohio St. 36, 1 Ann. Cas. 618 (quoting and adopting definition in Baltimore & O. R. Co. v. Walker, 16 N. E. 475, 45 Ohio St. 577).

"The word 'owner,' as applied to land, is descriptive of various rights to and interests in land. As titles and rights to real property vary from the absolute and unqualified fee simple to that of the mere occupant, so the word 'own' and 'ownership' varies in its significance, according to context and subject-matter. Peterson v. Johnson, 111 N. W. 659, 660, 132 Wis. 280 (citing Merrill Ry. & Lighting Co. v. Mer-

rill, 96 N. W. 686, 119 Wis. 249; and 6 Words and Phrases, p. 4904).

"The word 'owner,' as applied to real estate, may designate the owner of the fee or the owner of a less estate, as a lessee for a term of years, or any rightful proprietor, and its meaning is to be gathered from the connection in which it is used, and from the subject-matter to which it is applied and when used in a statute, the obvious nature and purpose of the statute may indicate its meaning. Guild v. Prentis, 74 Atl. 1115, 1116, 83 Vt. 212, Ann. Cas. 1912A, 313."

In volume 2, page 1234, of this same authority will be found the following definition of "joint ownership":

"To constitute 'joint ownership' the shares must generally extend to the whole estate and be such as that neither of the owners would have an interest in the proceeds set apart to the other joint owner. Fullenwider v. Johnson, 139 S. W. 1096, 1097, 145 Ky. 19."

In view of these definitions, and of the fact that the obvious purpose of our partition statutes is to give the right of segregation to an owner of any interest in real estate in the broadest sense, we conclude that the parties here are joint owners under the statute in question, their interest being coextensive with the entire tract of land.

[2] As to the interest in the land sought to be partitioned, it might be well to bear in mind that this partition is not of oil and gas alone, but of all mineral rights whatsoever—coal, petroleum, valuable stones, oil, gas, or of any other property or matter that might be included in the term "minerals." That these minerals in place are part of and constitute an interest in the real estate is well settled in Texas. Benavides v. Hunt, 79 Tex. 383, 390, 15 S. W. 396; Priddy v. Green (Tex. Civ. App.) 220 S. W. 243, 249; Southern Oil Co. v. Colquitt, 28 Tex. Civ. App. 292, 69 S. W. 169; McEntire v. Thomason (Tex. Civ. App.) 210 S. W. 563; Tex. Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989; Hynson v. Gulf Production Co. (Tex. Civ. App.) 232 S. W. 873; Marnett Oil Co. v. Munsey (Tex. Civ. App.) 232 S. W. 867; Crabb v. Bell (Tex. Civ. App.) 220 S. W. 623; Jackson v. Scoggins (Tex. Civ. App.) 220 S. W. 302; Texas Co. v. Tankersley (Tex. Civ. App.) 229 S. W. 672; United N. & S. Oil Co. v. Meredith (Tex. Civ. App.) 258 S. W. 550.

In Texas Co. v. Daugherty, supra, the Supreme Court said:

"If the oil and gas, the subject of the conveyance, are in fact not beneath or within the land, and are therefore not capable of being reduced to possession, the conveyance is of no effect. But if they have not departed, and are beneath it, they are there as a part of the realty, and their conveyance while in place, if the instrument be given any effect, is consequently the conveyance of an interest in the realty."

What is said of oil and gas being a part of and an interest in realty is true of any other mineral. In Gould on Waters, § 291, it is said:

"Petroleum oil, like subterranean water, is included in the comprehensive idea which the law attaches to the word 'land,' and will be protected as a part of the soil in which it is found. Like water, it is not the subject of property, except while in actual occupancy, and a grant of either water or oil is not a grant of the soil, or of anything for which ejectment will lie. The same is true of natural gas. A lease of land for the purposes of mining oil, coal, rock, or carbon oil passes a corporeal interest which is the proper subject of an action of ejectment, and a proportionate share of the oil to be produced by an oil well is an interest in land, a parol sale of which is void under the statute of fraud."

The above is quoted with approval in Texas Co. v. Daugherty, supra, and also the following from Thornton on Oil and Gas, § 19:

"Oil and gas, until severed from the realty, are as much a part of it as coal or stone. So long as they remain in the ground, outside of an artificial receptacle at least, as the casing of a well or pipe line, they must be treated as a part of the realty underneath the surface of which they lie. So much so are they a part of the realty, as we shall repeatedly see hereafter, that a conveyance of them in their natural state in the earth requires all the formalities of a conveyance of any other interest in the same real estate."

It is also well settled generally by the courts in the United States that mineral rights in the land, being an estate in freehold, are subject to partition. McConnell v. Pierce, 210 Ill. 627, 71 N. E. 622; Spar Co. v. Pierce, 184 Ky. 573, 213 S. W. 542; Ball v. Clark, 150 Ky. 383, 150 S. W. 359. In Texas Co. v. Daugherty, supra, the court quotes with approval the holdings of other courts that a conveyance of oil and gas in place amounts to a grant of a freehold interest using the following language:

"According to these decisions it is immaterial whether there is any such thing as absolute ownership of oil and gas in place. They plainly announce that the conveyance of such minerals in place, with a right to the use of the land for their extraction from the earth which may prove, under the instrument, of unlimited duration, creates a freehold interest in the land itself; and the last-named decision as clearly rules that such interest is taxable as realty and against the person who owns and may enjoy it."

"Being a part of the realty while in place, it would seem to logically follow that whenever they are conveyed while in that condition or possessing that status, a conveyance of an interest in the realty results. It is generally conceded that for the purpose of ownership and conveyance of solid minerals the earth may be divided horizontally as well as vertically, and that title to the surface may rest in one person and title to the strata beneath the surface containing such minerals in another."

[3] Appellees' undivided interest in and to the mineral rights is coextensive with the

boundary of the entire tract of land in, on, and under which the mineral rights are sought to be partitioned. Appellants purchased, knowing that this interest in the land was outstanding in appellees; so, in view of the above authorities, holding that mineral rights constitute a part of the realty and create an estate of freehold, and in view of the further fact that appellees' interest had been severed from the fee, or is capable of being so severed, we conclude that they have such a separate and distinct interest in the land that the statute in question authorizes a partition of it.

[4] That one owning an undivided interest in and to the mineral rights in a tract of land is entitled to possession, with the privilege or right to take them from the ground, is too well settled to merit a discussion. Texas Co. v. Daugherty, supra. So in this case appellees possess the three necessary prerequisites to authorize them to compel a statutory partition of their interest in the land in question. They are joint owners of an interest in the land and entitled to possession, with the privilege or right to take their interest from the ground.

We find no case construing the right of joint owners of all mineral rights in real estate to partition under this statute. In the case of Medina Oil Co. v. Murphy (Tex. Civ. App.) 233 S. W. 333, it seems to have been held that article 6096, as amended in 1917, did not authorize a partition of the oil and gas rights alone in the land; however, such holding was not necessary to a decision in that case under the facts. A writ of error was granted by the Supreme Court, but before the case was reached for disposition by that court it was settled between the parties.

In the recent case of Woods v. Rolls, 268 S. W. 990, the Fort Worth Court of Civil Appeals held that article 6096, as amended in 1917, did authorize the partition of the oil and gas rights alone in a tract of land, where that right was coextensive with the entire tract of land in controversy, thereby distinguishing that case from Medina Oil Co. v. Murphy, supra. (A writ of error was granted January 28, 1925, because of the importance of the question discussed.)

In Thornton on Oil and Gas, p. 464, it is held:

"There is no doubt that an action of partition lies to divide undeveloped and supposable oil or gas lands, just as it does in case of lands containing solid minerals; for it cannot be known, owing to the peculiar character of gas or oil as a mineral, whether the land to be divided is actual gas or oil lands, and to refuse partition on the theory that it may be would be for the court to enter upon the domain of mere speculation of supposability. But, after gas or oil has been discovered on the land, an entirely different question is presented. If the entire tract has been developed, and the wells are so distributed, and their production is well known, so that their respective values can be determin-

ed, then a division might possibly be decreed; but it would be almost impossible to find an instance of this kind. And then, too, other powerful wells, in spite of the supposition that the land had been fully developed, might be sunk upon one part of the divided tract, and all attempts to find other productive wells on the other tract might be failures. In such an event the partition proceedings would result in an unequal division in value, a thing studiously avoided in partition proceedings."

This reasoning was deduced from the decisions on mines or mineral land concerning which this same authority, at page 462, has the following to say:

"'The mines, when opened, in their nature were indivisible. Neither partition could be made at law, nor dower assigned by metes and bounds. The only partition that can be made is to order a sale of the mines and divide the proceeds.' These were instances where the mines had been opened. Where the mine has not been opened, the right to partition of land having upon it solid minerals has been recognized; and it will be decreed, unless the mineral is so situated that a probably fair division of it cannot be made by dividing the surface of the land. All things being equal, as between a partition and a sale, a partition will be decreed."

See Hughes v. Devlin, 23 Cal. 501; Rainey v. Frick Coke Co. (C. C.) 73 F. 389; Wilson v. Bogle, 95 Tenn. 290, 32 S. W. 386, 49 Am. St. Rep. 929; Conant v. Smith, 1 Aikens (Vt.) 67, 15 Am. Dec. 669; Kemble v. Kemble, 44 N. J. Eq. 454, 11 A. 733.

[5, 6] From what has just been said, we do not sustain appellants' second contention that, since no exploration has been made, the extent, value, and location of the minerals in the land cannot be ascertained, and are therefore incapable of partition in kind. The law favors a partition in kind, rather than a sale with partition of the proceeds. Since there has been no development or exploration for minerals of any kind, in, on, or under the land in question, we think that the court should assume for the purpose of partition that each acre of the land contains an equal amount of minerals, and partition by dividing the surface. To assume that there are no minerals in the land would be to defeat the grant which undertakes to convey them. The assumption that each acre contains an equal amount of undeveloped minerals is exactly what is done when the fee is partitioned between joint owners, for a partition of the fee carries with it as an incident of title in fee a partition of any mineral interest not theretofore severed from the fee. If it is fair to assume in that character of partition that each acre contains a like amount of minerals, then no good reason exists why the same assumption should not be indulged in a partition of the undeveloped mineral rights in land. To assume that no minerals are in or under the land, as appellants insist we should do, until it has been established that they do exist by develop-

ment, would be to refuse a partition upon a mere conjecture or supposition that they do not exist in or under the land, and thereby defeat the grant which assumes that they do exist.

[7] Appellants' third contention is that the interests or estates of the parties hereto are not of equal dignity and therefore cannot be partitioned. The statute does not require that the estates be of equal dignity in the sense contended for by appellants to authorize a partition. Appellants say that, since they own the fee and a one-half undivided interest in and to the minerals as an incident of that fee, which has not yet been severed, and since appellees only own an undivided one-half interest in the minerals, constituting an estate already severed from the fee, the estates sought to be partitioned are not on equal parity, nor of equal dignity. We do not sustain this contention. A life estate, or an estate for any term of years, is not of equal dignity, in the sense contended for by appellants, with a fee-simple estate; yet our courts have always held that they constituted such an interest in land that partition could be compelled. Tieman v. Baker, 63 Tex. 643.

We think the test of a right to compel partition under this statute is that the interests of the joint owners generally extend to the whole tract of land, which interests are capable of being severed from the fee or other estates, and with a present right of the owners to a joint possession. It is clear to our minds that the Legislature intended to use the term "joint owner" in its broadest sense. In that sense he is not necessarily one owning the fee simple, or one having in the property the highest estate it will admit of, but is one who owns any interest in real estate entitling him to joint possession and use. Appellees have met this test. They are joint owners of an interest in the land coextensive with its boundaries, and are entitled to a joint possession with appellants, at least for the purpose of discovering and taking their interest in the minerals in or under the land, which interest they owned long before appellants acquired their interest in the land.

[8] Appellants' fourth contention is that the 1917 amendment to article 6096, supra, in so far as it affects this case, is void, as contravening article 1, § 16, of the Texas Constitution relating to retroactivity; the specific complaint being that the transaction vesting the relative proportionate interest of the parties having transpired long before the passage of the 1917 amendment, to partition those undivided mineral interests, extending to each acre of the land involved, would to that extent deprive the parties of vested rights. We think the statute involved authorized the partition here sought both before and after its amendment in 1917; the amendment merely giving the right to partition minerals by name. The statute, both before and after its amendment, authorized a partition between joint owners of any interest in real estate, entitling them to an equal right of possession for the purpose of using and enjoying such undivided interest. Such being the status of the parties here, the question of the retroactivity of this statute is not involved, and we will not take time nor space to discuss this question.

For the same reason, appellants' contention that, since they had placed certain improvements on the land prior to this amendment, such partition will therefore deprive them of vested rights in these improvements, is also not sustained.

[9] Neither do we sustain appellants' contention that since they had made these improvements, a partition could not be had of the minerals, by dividing the surface, without it being an unfair or unequal division. Appellants made these improvements, knowing of appellees' one-half undivided interest in the minerals; also knowing of their right to possession of the surface for the purpose of discovering and reducing these minerals to possession. There is no evidence in the record disclosing that a division of the surface for a partition of the mineral rights would in the least interfere with appellants in the use of these improvements; nor does the record disclose any fact or circumstance rendering difficult a partition because of these improvements; nor does it show that these improvements could not be taken into consideration and protected by the commissioners appointed to make the division.

The view that we take of this case renders appellants' other propositions immaterial, and we therefore affirm the judgment of the trial court in all things.

Affirmed.