**COKER et al. v. VIERSON et al.**

No. 23209.  Jan. 14, 1935.

Rehearing Denied Feb. 12, 1935.

Edwards & Greer and D. H. Linebaugh, for appellants.

James A. Veasey, L. G. Owen, Anglin & Stevenson, Orr & Woodford, Cochran & Noble, Russell G Lowe, James B. Diggs, William C. Liedtke, Redmond S. Cole, and C. L. Billings, for appellees.

BAYLESS, J. Amanda Coker, now Brown, Richmond Coker, and Jennie Lasley, now Crain, who will be referred to hereinafter as appellants, but who were defendants, filed a petition to vacate the judgment rendered December 30, 1924, in cause No. 7141 in the district court of Seminole county, Okla., and for a new trial in said cause; and to these proceedings A. A. Vierson et al., who were plaintiffs in said cause No. 7141, and other parties who had acquired interests in the real estate after the rendition of said judgment, were required to defend against said petition to vacate, and will be referred to herein as appellees, except at such times as they are named. The trial court refused to vacate the judgment, and this appeal resulted.

Before taking up the consideration of the merits of the appeal we must first notice what is, in effect, an attack upon the right to appeal. After the judgment refusing to vacate the judgment had been rendered, a motion for new trial was filed, heard and overruled, and steps were taken to appeal therefrom. The appellants ordered a case-made and paid the court reporter therefor. Their attorneys relied upon the court reporter to prepare and deliver the case-made within the time allowed by the court, or if he was unable so to do, to get the necessary extension of time. In fact, the court reporter agreed to look after the application and order for extension of time, if one became necessary. It also appears that the trial judge and reporter (who were from another district and were assigned specially to hear this matter) intended to return to the district and extend the time, but miscalculated the date and let the time theretofore given to prepare and serve the case-made expire. Appellants thereupon proceeded according to section 538, O. S. 1931, to seek to reinstate their proceedings for appeal, and the trial judge, upon hearing the matter, held appellants had exercised diligence and that accident and misfortune which could not reasonably have been avoided had interfered with their right to appeal. The trial court

thereupon extended the time further, and the appellees brought a cross appeal questioning the correctness of this order.

Upon authority of Cherry v. Brown, 79 Okla. 215, 192 P. 227, and Harris v. First National Bank of Pryor Creek, 140 Okla. 269, 282 P. 1097, we hold, upon the facts disclosed, that the trial court acted within its discretion in allowing appellants to reinstitute their proceedings for appeal and extending the time therefor.

In taking up the merits of this appeal we believe it best to make a statement of the facts of the case. In our opinion there is no conflict as to the happenings, but only a difference in construction placed upon these happenings by the parties.

The appellants acquired their interest in this land by inheritance. Vierson and the other plaintiffs in No. 7141 acquired from certain of the heirs to this land a small undivided interest in the fee and a small undivided additional interest in the mineral rights. Vierson et al. then instituted action No. 7141, on April 15, 1924, for statutory partition. Appellants were properly served in said cause, and no question is raised concerning the service of process upon them. Appellants employed an attorney at Shawnee, who filed a demurrer on the 2nd day of May, 1924, on their behalf, to the petition for partition. This demurrer purported to have been filed on behalf of all defendants to that action, including appellants, but it was without authority as to any one except appellants. Appellants testified they soon became convinced that this attorney could not protect their rights in this matter, and they quit him. Just when they did quit him is not certain, but it is certain from the record that he never did anything for them other than file the demurrer. Willmott & Roberts, a firm of attorneys at Wewoka, on the 15th day of May, 1924, filed an answer on behalf of all the defendants to the action, but this was without authority as to the appellants. The trial court, acting upon the assumption that Willmott & Roberts had authority to represent appellants, made an order on June 7, 1924, striking the demurrer from the files, and it is clear from this order that the appellants Amanda Coker and Richmond Coker were not present in court or represented by counsel. Thereafter the plaintiffs in that action on November 3, 1924, filed an amended and supplemental petition for partition and alleged therein that since the commencement of the action they had acquired additional interests in the fee and prayed for the same

general relief. New summonses were issued, and appellants were served again. The record shows, however, that on November 6, 1924, five days before these summonses were issued, Willmott & Roberts filed another answer on behalf of all of the defendants, but this was without authority from appellants. The answer day set in the last summonses issued and served was December 6th. On November 29, 1924 (although the time to answer named in the last summonses had not yet expired, but there appearing of record an answer on behalf of all defendants), the court rendered judgment according to the prayer of the plaintiffs' petition and recited in the journal entry that all of the defendants, including appellants, were represented by Willmott & Roberts. Appellants then employed C. E. B. Cutler, an attorney at Okmulgee, to represent them, and he filed, on December 26, 1924, a motion to vacate the judgment of November 29, 1924. However, on December 20, 1924, the plaintiffs in that action had also filed a motion to vacate the judgment of November 29th. After Cutler had filed this motion on behalf of appellants, appellants consulted Willmott & Roberts, who had filed, without authority, the answer on their behalf upon which the judgment of November 29th had been rendered. We desire to summarize the testimony of appellants on this phase of the matter: Amanda Coker testified as follows: I know Willmott & Roberts; they had not represented appellants prior to December, 1924; I went to their office in December, 1924, after the motion to vacate the judgment of November, 1924, had been filed; we made no arrangements for them to represent appellants, but they said inasmuch as they were looking after the interests of the other defendants, they would look after the interests of the appellants and keep us informed; that appellants were not present in court in December, 1924, when judgment was rendered, nor did they authorize anyone to appear for them that day; that they had no knowledge of the steps taken in connection with the partition after the judgment was rendered; and, when her testimony was redirected to the visit to Willmott & Roberts office, she said:

"I went to Mr. Willmott because he kept sending for me and we went up to his office and I asked him what to do with that land. He said they were to put it up and sell it, but that we already had an answer made in it and he was looking after the minors' interest and it was undivided land and he thought he would look after all the heirs' interest, so he said to go on back and stop worrying about it and forget about it, that everything was O. K. now, and he said that

if it happened to be put up and sold again that he would let us know about it so we could buy it in; and I forgot about it until about April, 1925, and I was in Wewoka and I went to Roberts' office and told him if he could find somebody to take an oil and gas lease on the land that I would lease it because I needed the money, and he asked me what land I was talking about, and I told him the old home place, and he said that the land had been sold some time ago, and he told me to go to the clerk's office and get my money, or if I wanted him to he would go and get it for me, and I told him that I didn't want the land to be sold; so I didn't ask him to get the money for me and I came on over to the courthouse and looked it up and Robert Fish told me the land had been sold."

Concerning the filing of the pleadings by Willmott & Roberts, Don W. Willmott, called as a witness on behalf of the appellants, testified, without contradiction, in substance, as follows:

"I know Amanda Coker; she is the daughter of Dave Coker, whom we were representing; Dave Coker wanted us to represent the appellants"

—and made the following statement in answer to a question:

"Well, I suggested to Dave that he better have the adult children come in and talk to us about the case, and Amanda did come in and I think her sister was with her, I don't know exactly who it was, Minnie, I think, but they came to the office and we talked about the case and I told them like I would any client about the procedure in a partition suit. As I recall it, the report of the commissioners had not been filed at that time."

This testimony is followed by other testimony by the same witness to the same effect, relating incidents by which he fixes the time of the conference with Amanda Coker and her companion. The appellants also showed that they never consulted or communicated with Cutler after his employment. The record shows that on December 30, 1924, the court took up the motion of the plaintiffs to vacate the judgment, sustained this motion and set aside the judgment of November 29, 1924, on the ground that it had been prematurely granted. No action was taken at that time upon appellants' motion to vacate, which was based on two grounds, to wit: (1) Premature rendition of judgment, and (2) lack of authority of the attorneys at Wewoka to represent appellants.

On the same day the court proceeded to render another judgment in favor of plaintiffs and against all defendants, including

appellants, to the same effect as the judgment of November 29, 1924, and recited in this judgment that all the defendants, including appellants, were represented in court by Willmott & Roberts. In this judgment the court provided for partition, for the appointment of appraisers and other necessary steps. The record shows, however, that on December 29, 1924, the day before the judgment was rendered, the court had already appointed appraisers, and when the appraisers acted in this matter, they purported to act under the order of appointment of December 29, 1924, rather than the appointment contained in the judgment of December 30, 1924. The appraisers acted and reported to the court that the property could not be partitioned in kind, but recommended that it be sold, and appraised the surface rights separate from the mineral rights as instructed by the court. The plaintiffs in the action elected to take the property at the appraised price; this election was confirmed the same day and was filed and a sheriff's deed issued to plaintiffs, and the money belonging to appellants was paid into court. On the same day the motion of appellants to vacate the judgment of November 29, 1924, based upon two grounds aforesaid, was called to the attention of the court, and the court made an order striking this motion from the files upon the grounds that it was frivolous. The three-year period within which appellants might move to vacate the judgment of December 30th, under subdivisions 3 and 6 of section 556, O. S. 1931, would expire December 30, 1927. The petition upon which the matter was considered was (as later amended and supplemented) filed December 29, 1927.

At this point it is proper to analyze the petition to vacate the judgment of December 30, 1924, and the amended petition and supplement thereto. The petition filed December 29, 1927, is voluminous and is a history of the proceedings had in cause No. 7141 up to and including January 15, 1925. Because the evidence introduced at the trial of this matter by the appellants goes to one point, mainly, the authority of Willmott & Roberts to represent them, we desire to refer to said allegations in this petition which throw light upon the appellants' theory concerning the existence of the relationship of attorney and client between Willmott & Roberts and them.

In paragraph No. 3, appellants deny that the attorney at Shawnee was authorized to represent them. In paragraph No. 4, appellants deny the authority of Willmott &

Roberts to file the demurrer of May 15, 1924, on their behalf. In paragraph No. 12, they again deny the authority of Willmott & Roberts to file the answer of November 6, 1924, in their behalf. In paragraph No. 13, they deny the authority of these same attorneys to represent them at the trial of the cause on November 29, 1924. In paragraph No. 28, appellants list their reasons why the title acquired by the plaintiffs to the action by the partition proceedings was null and void as to appellants. In subdivision A they make allegations concerning Willmott & Roberts, a portion of which we desire to quote:

"(A) In the latter part of December, 1924 (the exact date they cannot now give), Amanda Coker and Minnie Coker, acting for the adult defendants, conferred with Willmott & Roberts as attorneys at their offices regarding said case. Said attorneys had no authority from the adult defendants to represent them in said cause prior to said time, and any steps taken by them, as attorneys assuming to act for and bind said adult defendants prior to said date, were unauthorized by said adult defendants. At said conference they were informed and advised by said attorneys that the proceedings pending in court were for the purpose of partitioning the lands, and that under the law it was possible to have the lands sold. Said Amanda Coker and Minnie Coker advised the attorneys at that time that the lands in controversy constituted the homestead of themselves and the other defendants; that they did not want said lands sold away from them, but desired to retain them so as to protect their homesteads. In said conversation said persons also informed said attorneys that if said lands were to be sold they desired to have an opportunity to buy them in and retain their homes, and the said attorneys, speaking by and through John W. Willmott, advised them that they, the said attorneys, would keep them, the defendants, fully advised as to their interests as said proceedings progressed, and would not allow their lands to be conveyed away from them without their being fully advised beforehand. They believed what said attorneys said and relied thereon, and so relying went away and awaited advice from them. Said defendants did not understand the law or court procedure, and were unaccustomed to attending to legal business; they were and are country people, ignorant Indians, and unaccustomed to attending to business or court matters, and depended solely upon what the said Willmott said to them, fully expecting Willmott & Roberts would advise them and protect their interests as the case proceeded."

Then follows allegations of nonfeasance

on the part of these attorneys upon which the appellants principally base their grounds of irregularity in obtaining the judgment and fraud on the part of the successful party. In paragraph No. 30, they charge that the plaintiffs in said action knew of "the unlawful, wrongful, fraudulent acts and omissions of said * * * attorneys for the adult defendants * * *." Appellants were adult defendants, and we take this to be an allegation that these attorneys were their counsel in the action. In paragraph No. 31 they plead:

"That they depended upon the said Willmott & Roberts to advise them of their rights, and of any move in the court which might result in the sale of said land and property as hereinbefore set out. That the said Willmott & Roberts never at any time advised them that said property was to be conveyed away, or took any steps to try to help them save it, and they never knew that they had lost their homes until the ____day of____, 1927, when they employed their present counsel and were advised by him with respect thereto."

Taking all of these allegations into consideration, we cannot arrive at any other conclusion than that the plaintiffs pleaded a set of facts which showed that the relationship of attorney and client existed between Willmott & Roberts and themselves. If these allegations are insufficient to show this relationship, then the appellants do not state a cause of action in this petition, because the attorneys at Wewoka did not owe them any legal duty and the allegations of the appellants concerning the nonfeasance, irregularity in obtaining judgment, and fraud, etc., would be without foundation.

On December 29, 1927, the day the petition to vacate the judgment of December 30, 1924, was filed, a summons was issued to Oklahoma county to be served upon four corporations, parties to the proceedings to vacate. This summons was served upon three of these corporations, but the fourth, Gypsy Oil Company, a corporation, was not served with this summons and was not served until December 27, 1928, or about one year later. On December 30th, a summons was issued to Seminole county directing service upon certain defendants both in that county and in Okmulgee county. No persistent or diligent effort to obtain service was continued, and some of the defendants were not served until more than a year later and some were never served but entered their voluntary appearance about a year after the filing of the petition.

January 22, 1929, appellants asked leave to file additional pleadings, and an order was entered reading, in part, as follows:

"Defendants be and they are hereby permitted to file within 3 days from this date their 'amendment to petition to vacate judgment and motion for new trial,' the same to be considered as supplementing the allegations of the original 'petition to vacate judgment and motion for new trial' and in connection with and in addition thereto."

On the same day the appellants filed "amendment to petition to vacate judgment and a motion for new trial." The first paragraph of this pleading reads in part as follows:

"These defendants still stand upon their original 'petition to vacate judgment and motion for new trial' except as the same is changed and amended by this instrument."

It is sufficient to say of the rest of this pleading that it is a denial of any authority on the part of Willmott & Roberts to represent them at any time for any purpose and a charge that the plaintiffs in said cause knew of this.

The court sustained the appellee's demurrer upon the ground that the evidence of appellants was insufficient to establish the cause of action. There is a direct and positive conflict between the first petition to vacate the judgment and the amendment and the supplement to it. We have heretofore construed the first petition to plead the relationship of attorney and client between Willmott & Roberts and appellants. We have heretofore said that the amendment and supplement utterly denies this relationship at any time. The two stand side by side and no effort was made to require appellants to elect upon which they would stand. The evidence of appellants conforms to the allegations of the first petition and contradicts the last one. But the evidence of the appellants, after establishing what must be regarded as the relationship of attorney and client, falls far short of establishing the fraud, collusion, and conspiracy charged to have existed between the attorneys and the plaintiffs in the partition action. Practically all of appellants' cause of action to vacate the judgment of December 30, 1924, hinged upon or revolved about their relations with Willmott & Roberts. The irregularities shown by the pleadings concerned steps in the procedure and were not jurisdictional. The appellants do not attempt to plead a defense of fact to the partition. Their only objection or defense is one of law, which will be noticed later. They complain of being deprived of an opportunity to elect to take the property at its appraised

value, as did the plaintiffs, thereby forcing a public sale of the property. The appellants testified that they did not have the money to pay for this property even if they had been the successful bidders, but would have been forced to borrow it; and they did not testify that they could have borrowed it. The appellants nowhere testified to the value of the property or that it was worth more than it was appraised for or that it would have brought more at the sale had they been present to bid for it. The trial court committed no error in sustaining the demurrer to the evidence interposed by the appellees.

Gypsy Oil Company, a corporation, and certain other appellees, have filed a separate brief raising the question of the statute of limitations concerning the commencement of the action against them. The facts, as above stated by us, relating the efforts at commencing these proceedings to vacate the judgment of December 30, 1924, would have justified the trial court in sustaining the demurrer, as to these certain appellees, upon that ground also. But the trial court did not see fit to do so; and, as our affirmance of the trial court's action covers all of appellees, we do not deem it necessary to notice this particular ground further. Appellants assert that, as a matter of law, a court of law has no authority to separate the oil and gas rights from the fee in a statutory partition. They base this contention upon Kolachny v. Galbreath, 26 Okla. 772, 110 P. 902; Morgan v. McGee, 117 Okla. 212, 245 P. 888, and other cases holding, in effect, that oil and gas in place are not, like solid minerals, capable of ownership separate and distinct from the soil without being reduced to possession.

We are not going to undertake an academic discussion of the character of an estate acquired under a conveyance absolute in form of oil and gas in place, and the difference between the rights thus acquired and those acquired under an unqualified conveyance of real estate in fee simple. We have before us a record differing from any other state of facts called to our attention. The real estate descended by inheritance, as aforesaid, in 45th parts. The parties to this action were in three classes, to wit: (1) Some owning 21/45 of the fee and minerals undivided, plus 12/45 interest in the mineral rights without corresponding surface rights: (2) some owning 12/45 of the fee and minerals undivided, and (3) some owning 12/45 in the surface rights only. The custom and practice of dealing in such

fractional parts in the oil and gas in place, whether there is production or not, separately from or intermingled with the soil, is of such long standing and has never failed in the past of legal sanction and protection in this state. As a matter of practical business adjustment in every-day life, no difficulty occurs in the transactions concerning such rights and the incidents attached thereto. When the courts of law are called upon to deal with such long-recognized and established business customs and practice, they cannot be less efficacious. Appellants contend that this partition is statutory and inflexible and therefore inadequate for this situation. We do not subscribe to this belief. The subject of partition is governed by chapter 3, art. 9, O. S. 1931 (sections 749-764). Section 764 reads:

"The court shall have full power to make any order not inconsistent with the provisions of this article, that may be necessary to make a just and equitable partition between the parties, and to secure their respective interests."

This is a distinct grant of quasi equitable powers to a court of law, which if, in the administration of statutory power of partition, there should arise a situation of such intolerable rigidity or inflexibility as would seem to be an absolute barrier to the proper execution of such statutory powers, that the court has the power to do what is right and just under the circumstances. These property rights were incapable of partition in kind, as this court has often held. The property had no proven oil and gas value and because of the diversity of the character of estates or interests or rights owned by these parties, and the fact that some of the interests were merely speculative possibilities, it was impossible to partition in kind. Therefore, the trial court properly ordered the sale of the surface and minerals separately and the distribution of the proceeds from said sale ratably. See Hall v. Douglas (W. Va.) 125 S. E. 282; Stern v. Gt. Sou. Land Co. (Miss.) 114 So. 739; Black v. Sylvania Prod. Co. (Ohio St.) 137 N. E. 904; and Henderson v. Chesley (Tex. Civ. App.) 273 S. W. 299.

The judgment of the trial court is affirmed.

CULLISON, V. C. J., and SWINDALL, McNEILL, and BUSBY, JJ., concur. RILEY, C. J., and WELCH, J., dissent. OSBORN, J., disqualified and not participating. ANDREWS, J., absent.