John Fred DAVIS, Plaintiff In Error,

v.

**LUGERT–ALTUS IRRIGATION DISTRICT,** a Municipal Corporation, Defendants In Error.

No. 38778.

Supreme Court of Oklahoma.

Oct. 9, 1962.

Garrett & Garrett, Mangum, for plaintiff in error.

Harbison & Whiteside, Altus, Arnett & McDaniel, Mangum,. for defendants in error.

JACKSON, Justice.

Parties are referred to as in the trial court.

Plaintiff John Fred Davis sued defendant Lugert-Altus Irrigation District for damages by reason of water seepage from a certain irrigation ditch allegedly operated by defendant alongside and adjacent to plaintiff's farm, and for injunctive relief.

Defendant denied any negligence, and further alleged that the irrigation ditch complained of was constructed by and was under the control of, the United States and that defendant was therefore not responsible. It further alleged that its relationship with the United States, and the irrigation system concerned, was governed by the terms of a certain contract between the defendant and the United States pursuant to the Federal Reclamation Laws of the United States.

During the course of presentation of plaintiff's case, a copy of the contract was produced by defendant, and was introduced in evidence by plaintiff. At the conclusion of plaintiff's case, the defendant's demurrer to the evidence was sustained. From the order sustaining the demurrer and dismissing the case, plaintiff appeals.

It is evident that the trial court sustained the demurrer because it considered the District to be only the fiscal agent of the United States in connection with the irrigation system, and was therefore not the "operator" of the system, and not chargeable with any negligence in connection with its operation. Although there are some differences in terminology, the parties to this appeal generally agree that the issue here is whether, by the terms of the contract concerned, defendant District was in control of, and operating, the irrigation system.

Plaintiff first contends that defendant admitted, in its pleadings and in the course of the trial, that it operated the irrigation system. However, a close exam-

ination of the claimed "admissions" discloses that they were always qualified by the phrase "under the terms of the contract of January 12, 1942" or words of similar import. We therefore do not believe it can be said that defendant admitted operation of the system in the sense contended for by plaintiff. We must therefore look to the lengthy contract itself to determine the relationship of the parties.

It concerns generally the construction, maintenance and operation of the "Altus Federal Reclamation project" for the diversion, storage, carriage, distribution and beneficial use for flood control, irrigation, municipal, domestic and other purposes of the waters of the North Fork of the Red River and its tributaries. It contains 37 "articles" giving detailed provisions as to such things as construction of works (by the United States) and limit of expenditure therefor; terms of payment by defendant District (40 equal annual payments, to begin upon giving of "construction notice" by Secretary of Interior, after substantial completion of construction); advance payment by the district of an operation and maintenance fund; payment of water rental before commencement of construction cost repayment; repayment by the District of certain miscellaneous costs; levy of taxes upon lands in the district; fixing of rates and tolls by the district; valuation and sale of excess lands; and other matters to be hereinafter noted.

Article 11 (a) provides that at any time after the year in which the first of the 40 annual construction repayment installments becomes due, the Secretary of the Interior may give a "transfer notice" to the District; that the District agrees, upon the effective date of the transfer notice, to take over the "care, maintenance and operation" of the transferred irrigation works without expense to the United States. The only reasonable conclusion from the above provision is that until the giving of the transfer notice, *the United States operates the irrigation system.*

Other provisions of the contract strengthen the conclusion. For instance, article 8 (a) provides that during the time that the project is being *operated by the United States,* the District shall pay annually to the United States a "minimum advance annual operation and maintenance charge" in the amount of one dollar per acre of irrigable district land. Since funds for the operation and maintenance of the system are merely delivered by the District to the United States it follows that the United States has the actual direction and control of the maintenance and operation of the system. Article 8(b) provides that the amounts so paid over may be expended *by the United States* to the extent that the expenditures are necessary "in the proper *operation and maintenance,* including improvements and betterments, of the project works". (Emphasis supplied.) Article 12 provides that during periods *when the District is operating the project* it shall furnish "competent supervision, management and personnel for the operation of works hereafter transferred to it for operation and maintenance". There is no requirement in the contract for the District to furnish "competent supervision, management and personnel" *prior* to the transfer.

The parties hereto agree that the question of "management, operation or control" of the irrigation system is the decisive factor in this case. This is in accordance with the rule expressed in cases construing similar contracts by the federal courts. See Twin Falls Canal Co. v. American Falls Reservoir District No. 2, 9 Cir., 59 F.2d 19 (Certiorari denied in 287 U.S. 638, 53 S.Ct. 87, 77 L.Ed. 552).

Under the contract herein the operation and maintenance of the irrigation system in the instant case was under the direction and control of the United States in the beginning of the project, but the "care, maintenance and operation" of the system could be transferred to the District upon the giving of the transfer notice provided for in Article 11(a) of the contract.

A careful examination of the record herein discloses that there is no evidence that the transfer notice was ever given. Neither do we find any evidence or

testimony tending to infer that the District had actually participated in the management, operation or control of the irrigation system. Such being the case the plaintiff wholly failed to prove an essential part of his case, namely: that his damage was caused by defendant's negligent operation of the irrigation system. See Coker v. Vierson, 170 Okl. 528, 41 P.2d 95, wherein this court said:

"In a case tried by the court, where a demurrer to plaintiff's evidence is sustained, and it is apparent from an examination of the evidence that plaintiff wholly failed to prove his case, the judgment should be affirmed."

The judgment of the trial court is affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and WELCH, DAVISON, JOHNSON and IRWIN, JJ., concur.

BERRY, J., dissents.